Michael Litvin, OSB No. 111211
Email: ml@motivatelaw.com
MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Phone: 503-446-2667

*Attorney for Plaintiffs*
*Smartypants Industries, Inc.,*
*Thomas Livernash, Leslie*
*Livernash, and James S. Heuer*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SMARTYPANTS INDUSTRIES, INC., formerly known as EVOS LOGISTICS, INC., THOMAS LIVERNASH, LESLIE LIVERNASH, and JAMES S. HEUER<br><br>Plaintiffs,<br><br>v.<br><br>BLUE-GRACE TECHNOLOGIES LLC, and BLUE-GRACE GROUP LLC<br><br>Defendants. | Case No. 6:25-cv-02232-AA<br><br>FIRST AMENDED COMPLAINT |



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

COME NOW Plaintiffs Smartypants Industries, Inc., Thomas Livernash, Leslie Livernash, and James S. Heuer, by counsel, to allege as follows:

## PARTIES

1. Plaintiff Smartypants Industries, Inc. ("Evos") is an Oregon corporation formerly known as Evos Logistics, Inc. At all times relevant to this action, Plaintiff is and has been an Oregon corporation with its principal place of business in Deschutes County, Oregon.

2. Plaintiff Thomas Livernash ("Livernash") is an individual who, at all times relevant to this action, is and has been a resident of Deschutes County, Oregon.

3. Plaintiff Leslie Livernash is an individual who, at all times relevant to this action, is and has been a resident of Deschutes County, Oregon.

4. Plaintiff James S. Heuer ("Heuer") is an individual who, at all times relevant to this action, is and has been a resident of Multnomah County, Oregon.

5. On information and belief, Defendant Blue-Grace Technologies LLC ("BGT") is a limited liability company formed under the laws of the State of Florida and, at all times relevant to this action, is and has been operating in Hillsborough County, Florida.

6. On information and belief, Defendant Blue-Grace Group LLC ("BG") is a limited liability company formed under the laws of the State of Delaware and, at all times relevant to this action, is and has been operating in Hillsborough County, Florida.

7. BGT and BG, collectively, may be referred to as the "Defendants" herein.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action was removed to this



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Court under 28 U.S.C. §§ 1332, 1441, and 1446. The Court has supplemental jurisdiction over Plaintiffs' related state and common law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. § 1441(a) because this action was removed from the Circuit Court of the State of Oregon for Deschutes County.

**STATEMENT OF FACTS**

10. At all material times leading to the execution and closing of that certain Asset Purchase Agreement (the "APA") dated as of February 29, 2024, by and among Evos, as 'Seller'; Livernash, Leslie Livernash, and Heuer, as shareholders of Evos; and BGT, as 'Buyer' and related transaction documents, Livernash served as President of Evos with responsibility for business strategy and sales; Heuer served as Chief Technology officer of Evos with all technical responsibility for the development and maintenance of the transportation software tools created and offered by Evos to third parties (collectively, the "Evos Software"); and Leslie Livernash served as Secretary of Evos, and managed customer service and administrative matters. Together, Livernash, Heuer, and Leslie Livernash may be referred to as the "Evos Officers".

11. Over the course of approximately 20 years, including work performed by one or more predecessor companies of Evos as pertains to the Evos Software, the Evos Officers developed the Evos Software into a valuable intellectual property asset. Throughout essentially all of its existence as a commercialized product, the Evos Software was sold pursuant to a software as a service ("SaaS") subscription model.

12. The Evos Business was a SaaS software business focused on providing the Evos Software to shippers, transportation service providers, consulting firms and other software firms that provide or utilize the services of the industrial transportation industry, including but not limited to load planning and optimization. The Evos Software included a product named Evos



MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

PlanTools, which is a web-based load optimization software ("PlanTools"), and also included Evos BidTools, which is a web-based transportation sourcing system ("BidTools").

13. In or around 2022, an entity affiliated with Defendants, BG became a customer of Evos, as memorialized and evidenced by that certain Services Analysis Agreement with an effective date of December 1, 2022 (collectively, the Defendants, BG, and/or one or more other entities affiliated with the foregoing may be referred to as the "BlueGrace Group"). Over time, Evos and entered into discussions with the BlueGrace Group regarding the potential sale of the Evos Software and related assets of Evos to one or more of the Defendants.

14. On or around February 29, 2024, Evos sold all or substantially all of the assets used in its business operations to BGT (collectively, the "Evos Business"), pursuant to the terms of the APA, which incorporated various other transaction documents. As evidenced in part by the sale of such assets to BGT, which is understood to own and manage technology assets for the Defendants and their affiliated entities (rather than some other entity affiliated with the Defendants), the sale of the Evos Software and related software was intended as a sale of the Evos Software as a SaaS product.

15. The APA included multiple ancillary agreements and other documents, including without limitation: (a) That certain Employment Agreement (the "Livernash Employment Agreement"), dated February 29, 2024, by and between Livernash, as 'Employee' thereunder, and BGT as the 'Company' thereunder; (b) that certain Employment Agreement (the "Heuer Employment Agreement"), dated February 29, 2024, by and between Heuer, as 'Employee' thereunder, and BGT as the 'Company' thereunder; (c) that certain Earn-Out Agreement dated February 29, 2024, by and among Evos, as 'Seller', Livernash, Leslie Livernash, and Heuer, as shareholders of Evos, and BGT, as 'Buyer'; and (d) that certain Guarantee (the "Guarantee")



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

dated February 29, 2024 made by BG in favor of Evos, Livernash, and Heuer, which expressly provides that BG, as 'Guarantor' thereunder, shall be directly and primarily liable to Plaintiffs for any amount due from BGT under the various transaction documents.

16. Section 8.05 of the APA incorporated the Livernash Employment Agreement, the Earn-Out Agreement, and other Transaction Documents into the APA, stating as follows: "This Agreement and the ancillary agreements and other documents to be delivered hereunder . . . constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter."

17. Under Section 1.05 of the APA, a material portion of the total purchase price payable by BGT for the Evos Business, totaling up to One Million Five Hundred Thousand Dollars and 00/100 ($1,500,000.00), was made subject to the terms of the Earnout Agreement. As material inducement for Plaintiffs to enter into the Earnout Agreement, and to help maximize the value of the Evos Software as a SaaS product to the financial benefit of both Plaintiffs and Defendants, BGT extended the Livernash Employment Agreement to Livernash, and the Heuer Employment Agreement to Heuer.

18. Under Sections 2.1 and 2.2 of the Livernash Employment Agreement, Livernash was to serve in the Technology Department of BGT, and was to be responsible for the "supervision and responsibility" for the newly acquired Evos Business that BGT purchased from Evos.

19. In addition to the above, Schedule 2.1 of the Livernash Employment Agreement further specified that Livernash was to serve as a "salesperson, account manager, and/or consultant" with respect to PlanTools.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

20. Under Section 3 of the Livernash Employment Agreement, the Bend, Oregon metropolitan area was to be the principal place of Livernash's employment services to be provided under the Livernash Employment Agreement.

21. Section 17 of the Livernash Employment Agreement stated, in relevant part, as follows: "No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the CEO & President of the Company [i.e., BGT]."

22. Under Section 5.06 of the APA, BGT memorialized its intent and desire to complete a conversion process (the "Conversion Process") of PlanTools from one programming language (Visual Fox Pro) to another programming language (Python).

23. Under Section 4.5 of the Heuer Employment Agreement, BGT was required to make $100,000.00 available to Heuer, which in the first instance, was to be applied to costs attributable to any third-party vendors of Heuer's selection, subject to BGT's approval for such selection (the "Third-Party Conversion Vendors") for purposes of completing the Conversion Process. To the extent that any part of such $100,000.00 sum would not be spent on Third-Party Conversion Vendors, it was defined by Section 4.5 to constitute a surplus (the "Conversion Surplus").

24. After consultation between Heuer and BGT's then-serving Chief Technology Officer, Azad Ratzki ("Ratzki"), no Third-Party Conversion Vendors were selected to work on any part of the Conversion Process. As a result, as of the expiration of the Heuer Employment Agreement on or around February 28, 2025, the Conversion Surplus equaled an amount of $100,000.

25. Shortly after the closing of the APA, consistent with Section 2.1 and 2.2 of the



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Livernash Employment Agreement, BGT began to incorporate and operate the Evos Business as a division within its Technology Department, headed by Ratzki, which included development of a new website for the Evos Business in consultation with Livernash (the "Initial BG Evos Website"), preparation of one or more template demonstrations for Evos Software, and launch of a pay-per-click digital marketing program.

26. However, shortly after the Initial New Evos Website was completed and became publicly accessible via the Internet, it was removed and replaced with a different website (the "New BG Evos Website"), without any prior notice or opportunity to approve or withhold consent for the same afforded to Livernash. The New BG Evos Website did not include direct contact information for Livernash, and Livernash was also deprived of having any supervision with respect to the routing of leads and other information obtained from the "Contact us" page of the New BG Evos Website (https://evossmarttools.com/contact-us/).

27. Related to the above, in or around spring of 2024, Livernash learned that the Defendants together with one or more other affiliated companies, made the unilateral decision to cease operating the Evos Business as a SaaS enterprise within the Technology Department of BGT with immediate effect, and without consent of Livernash (the "Asset Management Transfer"). As part the Asset Management Transfer, the marketing and sales functions relating to the Evos Business were reassigned to personnel who were outside of the Technology Department of BGT and who were not previously familiar with the Evos Software or the maximization of profits therefrom, with the net effect of depriving Livernash of the "supervision and responsibility" with respect to the Evos Business, contrary to the express provisions of Section 2.2 of the Livernash Employment Agreement.

28. As an example of the Asset Management Transfer, in an email sent by Jason



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Lockard ("Lockard"), Senior Vice President of Managed Logistics for the BlueGrace Group, to Chris Kupillas ("Kupillas") on April 30, 2024, Lockard stated as follows: CK [referring to Kupillas], Per our conversation I would like to have you own the creation of the Plan Tools [sic] SAAS sales strategy for BG." In conjunction with the Asset Management Transfer, Livernash understood from Ratzki that contrary to Ratzki's preference and recommendations, some representative of BG with higher authority than Ratzki decided that the sales function with respect to Evos Software would be taken away from Livernash and given to Chris Kupilas, and that Ratzki lacked the power to prevent this from happening.

29. Livernash never consented to the Asset Management Transfer. Furthermore, Section 17 of the Livernash Employment Agreement states, in part, that, "[n]o provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the CEO & President of the Company. . . . [N]or shall the failure of or delay by either of the parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege."

30. The Asset Management Transfer had the net effect of putting personnel who were not previously acquainted with maximizing revenues from the Evos Software in charge of selling the Evos Software. As a result, the Evos Software was generally relegated to being used as an incremental lead source to drive sales of managed logistics for the BlueGrace Group, with a corresponding negative effect on Evos's ability to earn all of the legitimately anticipated earnout consideration under the Earnout Agreement.

31. By notice to BGT given on or around October 30, 2025, Livernash resigned his position with BGT for Good Reason (as defined in the Livernash Employment Agreement), in



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

accordance with Sections 5.1(b)(iii), 5.1(b)(v), and 5.2 of the Livernash Employment Agreement, on the basis of BGT's material breach of one or more material provisions of the Livernash Employment Agreement, and a material, adverse change in Livernash's authority, duties or responsibilities.

32. Separately and in addition to the foregoing, Section 1.1(f) of the Earnout Agreement states as follows: "Buyer [i.e., BGT] shall provide Seller with quarterly statements throughout the term of this Agreement calculating Total Net Revenue (collectively, the 'Earn-out Statements'). Buyer represents and warrants that each of the Earn-out Statements shall be true, accurate, complete, and fully compliant with the provisions of this Agreement." (collectively for such Earn-out Statements, the "Earnout Statements").

33. In or around fall of 2024, Evos communicated to one or more representatives of BGT that BGT had failed to deliver to Evos any of the quarterly Earnout Statements that were required to be provided by Section 1.1(f) of the Earnout Agreement.

34. After not receiving any substantive response or assurance from BGT in response to the above-referenced communications, Evos delivered multiple formal notices of breach to BGT on or around January 24, 2025, pertaining to the APA, Livernash Employment Agreement, and Earnout Agreement (collectively, the "Notices of Breach").

35. After receiving the Notices of Breach from Evos, BGT has delivered, through counsel, several purported quarterly Earnout Statements, but on information and belief, such Earnout Statements are inaccurate and significantly undercount earnout revenues accruing to the benefit of Evos. The purported quarterly Earnout Statements from BGT are inaccurate in part because they fail to apply all pertinent provisions of the Earnout Agreement with respect to the ongoing calculations of sums that are expected to be owed to Evos under the Earnout Agreement.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

For example, without limiting the foregoing, it appears on information and belief that the purported quarterly Earnout Statements are violative of the principles of Historical Pricing Adjustment (as defined below) and the Good-Faith Revenue Maximization (as defined below) that are a part of the Earnout Agreement.

36. For example, without limiting the general allegations in paragraph 33, Section 1(h)(i) of the Earnout Agreement states in relevant part as follows (the "Historical Pricing Adjustment"):

> Regardless of any discounts or changes in pricing structure that [BGT] gives to itself or any its affiliates with respect to Evos PlanTools or any other products or services that are part of the Purchased Assets, as defined in the Purchase Agreement, the amount of gross revenues in calculating Total Net Revenue, Continuing Net Revenue and Additional Generated Revenue shall include all imputed sums as may be necessary to credit Seller with the amount of gross revenue that Seller would have collected from Buyer or any of its affiliates from the applicable volume of products or services at no less than the rates that applied to [Evos's] products and services for [BGT] and/or its affiliates just prior to the Closing of the Purchase Agreement under [the services agreement that existed between Evos and an affiliate of BGT].

37. In addition, without limiting the general allegations in paragraph 33, Section 1(h)(ii) of the Earnout Agreement states in relevant part as follows (the "Good-Faith Revenue Maximization"):

> [BGT] and its affiliates shall endeavor in good faith to sell to current or future customers of Evos PlanTools or any other products or services that are part of the Purchased Assets, as defined in the Purchase Agreement, at no less than the rates or flat fees that may be reasonably extrapolated from historical practice prior to the Closing of the Purchase Agreement, subject to then current macroeconomic conditions.

38. The Earnout Agreement contains a limited dispute-resolution mechanism in Section 3 addressing disputes over BGT's calculation of the Earnout amount, which mechanism applies after BGT delivers its calculation of the "Earn-Out" (as such term is defined by the Earnout Agreement) at the latest within 60 days the time of the second



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

anniversary of the Earnout Agreement (i.e., with such approximate outer deadline being April 29, 2026) . Section 3 of the Earnout Agreement provides that, if the parties cannot amicably resolve a disagreement concerning BGT's calculation of the Earn-Out payment to Evos, the matter may be submitted to an independent accounting firm for purposes of recalculating the Earn-Out amount.

39. However, it is critical to note that Section 3 of the Earnout Agreement is not stated to be, and does not operate as, an exclusive dispute-resolution procedure for all disputes arising under the Earnout Agreement. Nothing in Section 3 purports to divest Plaintiffs of their right to seek judicial relief, nor does it require that all claims relating to the Earnout Agreement be submitted to an accountant as a condition precedent to suit. To the contrary, Section 5.5 of the Earnout Agreement expressly contemplates judicial enforcement in multiple potential courts of competent jurisdiction.

40. Consistent with its plain language and structure, Section 3 of the Earnout Agreement is appropriately interpreted as pertaining to disputes concerning the arithmetical accuracy of BGT's Earnout calculation. It does not address, and was never intended to govern, claims for material breach, bad-faith performance, violations of express covenants, or conduct that undermines or repudiates the Earnout Agreement prior to the date that the final Earnout payment is actually due.

41. Section 3 of the Earnout Agreement likewise does not constitute a waiver, whether express or implied, of Plaintiffs' right to file a judicial action alleging material breaches, violations, and anticipatory repudiation of the Earnout Agreement where BGT's wrongful conduct occurs prior to the issuance of any Earnout payment or outside the limited accounting exercise contemplated by Section 3.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

### (Breach of Contract – Livernash Employment Agreement)

42. Plaintiff Livernash herein incorporates the allegations of paragraphs 1 through 41.

43. In accordance with ORS 15.320(3), Oregon law applies with respect to the Livernash Employment Agreement because the Livernash Employment Agreement is a contract of employment for services to be rendered primarily in Oregon by a resident of Oregon.

44. BGT and Livernash executed the Livernash Employment Agreement, under which Livernash was expressly granted "supervision and responsibility" with respect to the newly acquired Evos Business, for a two-year term (the "Two-Year Term") that was to expire on or around February 28, 2026.

45. Livernash performed all of his obligations under the terms of the Livernash Employment Agreement.

46. All conditions required by the Livernash Employment Agreement for performance of BGT's obligations have occurred.

47. BGT materially breached the Livernash Employment Agreement by demoting Livernash, thus depriving Livernash of his contractual right to supervise and exercise responsibility with respect to the Evos Business, resulting in a material adverse change in Livernash's authority, duties, and/or responsibilities.

48. Due to BGT's breach of the Livernash Agreement, Livernash is entitled, without limitation, to his remaining salary of $50,000 owing with respect to the Two-Year Term under Section 5 of the Employment Agreement, the Conversion Surplus amount of $100,000 under Section 5 of the Employment Agreement, and the value of any other employment benefits as



MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

may be determined to be owing under Section 5 of the Employment Agreement.

49. Under the express provisions of the Guarantee, BG is directly and primarily liable, together with BGT, for all amounts that BGT owes to Livernash under the Livernash Employment Agreement.

50. As a result of the foregoing, Plaintiff Livernash has been damaged, jointly and severally by BGT and BG, in an amount to be determined at trial, but no less than a total of $150,000, plus interest of nine percent (9%) per annum legal rate pursuant to ORS 82.010(1)(a), from October 30, 2025 until paid.

51. Pursuant to Section 8.13 of the APA, Plaintiff Livernash is also entitled to his reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract – Earnout Agreement)**

52. Plaintiffs herein incorporate the allegations of paragraphs 1 through 51.

53. BGT and Plaintiffs executed the Earnout Agreement, in the context of the broader business sale deal that included, without limitation the APA and the Livernash Employment Agreement.

54. All conditions required for performance BGT's obligations under the Earnout Agreement had occurred.

55. Plaintiffs have complied with all obligations required of them in relation to the Earnout Agreement.

56. BGT's actions and omissions make it liable for breach of multiple independent breaches of the Earnout Agreement, which are listed as sub-parts below:



MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

**A. Breach of the implied covenant of good faith and fair dealing.**

57. Plaintiffs were materially induced to enter into the Earnout Agreement by BGT's contemporaneous entry into the Livernash Employment Agreement with Livernash, whose role as President of Evos and contractually promised "supervision and responsibility" with respect to the Evos Business after its acquisition by BGT was critical to Plaintiffs' reasonable expectations of the bargain relating to the Earnout Agreement.

58. As detailed above, BGT's materially breached the Livernash Employment Agreement by demoting Livernash and causing the unauthorized Asset Management Transfer.

59. BGT's material breach of the Livernash Employment Agreement constituted a breach of the implied covenant of good faith and fair dealing under the Earnout Agreement, with a corresponding negative effect on the amount of revenues that could be earned from sales of Evos Software products, thus harming Plaintiff's expectancy under the Earnout Agreement.

**B. Breach of Warranty Pertaining to True, Accurate, Complete, and Agreement-Compliant Earn-Out Statements**

60. Beginning with its purported quarterly statement provided on December 20, 2024, BGT breached its representation and warranty to provide quarterly statements that were true, accurate, complete, and fully compliant with the provisions of the Earnout Agreement, in violation of its representation and warranty under Section 1(f) of the Earnout Agreement.

In Section 1(f) of the Earnout Agreement, BGT represented and warranted that it would provide true, accurate, and complete information in a way that is compliant, without limitation, with the following Sections of the Earnout Agreement:

- Section 1(b) of the Earnout Agreement, which requires BGT to reflect and count revenue, from existing customer accounts of the Business as of the date of the Earnout Agreement,



MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

derived from all assets that BGT purchased under the APA, including without limitation BidTools, subject to limited discounts or allowances;

- Section 1(c) of the Earnout Agreement, which requires BGT to reflect and count revenue, from new customer accounts of the Business arising after the date of the Earnout Agreement, derived from all assets that BGT purchased under the APA, including without limitation BidTools, subject to limited discounts or allowances; and
- Section 1(d) of the Earnout Agreement, which requires BGT to account for "Gross Profit"[1] derived from any transportation related services provided by a "BG Entity"[2] to any customer account of the Business existing on the effective date of the Earnout Agreement, and certain other persons as may be relevant (collectively, "Attributed Revenue");
- Section 1(h) of the Earnout Agreement, which requires BGT to apply the principles of Historical Pricing Adjustment and Good-Faith Revenue Maximization, with the net effect being that: (a) BGT must add imputed additional revenue to certain actual revenues that are counted under the Earnout Agreement, based on applicable volume of products or services that flow through Evos Software, and (b) BGT must in good faith keep sale prices for relevant Evos Software services at or above a historical baseline, with limited exception.

**C. Breach of Obligation to Provide Quarterly Statements**

61. BGT completely failed to provide all quarterly statements that were due for the period between February 29, 2024 and December 20, 2024, in violation of its obligation and

[1] As defined by the Earnout Agreement.
[2] As defined by the Earnout Agreement.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

related representation and warranty to provide the same under Section 1(f) of the Earnout Agreement, and BGT only began formulating such quarterly statements after repeated inquiries and subsequent formal notices of breach that Evos delivered through counsel on or around January 24, 2025.

62. BGT's failure to provide quarterly statements under the Earnout Agreement for approximately one-half of the total Earnout Agreement period caused material damage to Evos and the other Plaintiffs by depriving them of their bargained-for opportunity to verify, as soon as possible, whether BGT was abiding by the Earnout Agreement terms, and to tailor their efforts to best maximize Total Net Revenue under the Earnout Agreement.

**D. Anticipatory Repudiation – Attributed Revenue**

63. Section 1(d) of the Earnout Agreement requires BGT to account, as part of its Attributed Revenue calculation, for certain revenues that are derived from any customer account of the Business existing on the effective date of the Earnout Agreement. BGT has failed to do so, and has in fact repudiated this provision of the Attributed Revenue concept, based on its own preferred reading of the phrase "customer account of the Business existing on the date herein" as somehow excluding customers of BG, even though all parties to this case understand the very same phrase appearing in Sections 1(b) and 1(c) of the Earnout Agreement as including these very same customers. In other words, BGT continues to insist that its unilateral interpretation of the Attributed Revenue formula defined in the Earnout Agreement is correct, even though it is completely contrary to the plain meaning of the words used and the way that all parties to this case interpret the same words in the context of other provisions of the Earnout Agreement.

64. After Evos formally delivered a notice of breach to BGT dated January 24, 2025 regarding BGT's failure to account for Attributed Revenue, BGT responded with a clear,



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

definite, and unequivocal repudiation that effectively refused to apply the plain meaning of Section 1(d) of the Earnout Agreement as regards the calculation of Attributed Revenue.

65. The above-referenced repudiation concerns a material term of the Earnout Agreement, and one worth significant sums of money to Evos if property construed, which meant that BGT's anticipatory repudiation of the same worked significant damages to the detriment of Plaintiffs.

66. Pursuant to Section 5.9 of the Earnout Agreement, Plaintiffs are entitled to recover their reasonable attorneys' fees and other costs incurred in enforcing the Earnout Agreement and prosecuting this claim.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract – Asset Purchase Agreement)**

67. Plaintiffs herein incorporate the allegations of paragraphs 1 through 66.

68. The APA contains an integration clause in Section 8.05, meaning that the parties to the APA contemplated that the APA and the ancillary agreements, including without limitation the Earnout Agreement, Livernash Employment Agreement, Promissory Note (as defined below), and Guarantee are all part of a business deal whose parts were intended to function in an interrelated way.

69. All conditions required for performance BGT's obligations under the APA have occurred.

70. Plaintiffs have complied with all obligations required of them in relation to the APA.

71. BGT's conduct makes it liable for multiple independent breaches of the APA, which are listed as sub-parts below:



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

**A. Breach of Section 1.05(iii).**

72. In accordance with Section 1.05(iii) of the APA, consideration under the Earnout Agreement is deemed to be part of the purchase price for the Purchased Assets under the APA.

73. By violating multiple provisions of the Earnout Agreement as detailed above, BGT's conduct amounts to an anticipatory repudiation of its obligations to pay the full extent of the purchase price under the APA that Evos has a right to receive.

74. Under 7.03(b) of the APA, BGT must indemnify each of the Plaintiffs and their affiliates and representatives from any losses based upon, arising out of, with respect to or by reason of, any breach or of any covenant to be performed by BGT under the APA.

**B. Breach of Section 4.01.**

75. Section 4.01 of the APA contains a warranty indicating that, "**Buyer has full company power and authority** to enter into this Agreement and the documents to be delivered hereunder, **to carry out its obligations hereunder and to consummate the transactions contemplated hereby**." (emphasis added).

76. Under 7.03(a) of the APA, BGT must indemnify each of the Plaintiffs and their affiliates and representatives from any losses based upon, arising out of, with respect to or by reason of, any inaccuracy in or breach of any of the representations and warranties of BGT contained in the APA.

77. As a proximate cause of BGT's breaches of the covenants and/or representations and warranties under the APA, Plaintiffs have been damaged in an amount to be determined at trial.

78. Furthermore, because the failures of BGT pertaining to the Livernash Employment Agreement and the Earnout Agreement relate to the essence of the business sale



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

transaction under the APA, BGT is liable for material breach under the APA which excuses further performance under the APA, including but not limited under the noncompetition provisions and other restrictive covenants therein.

79. Pursuant to Section 8.13 of the Asset Purchase Agreement, Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, and costs incurred in enforcing the APA and prosecuting this claim.

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment – Sale of Purchased Assets)**

80. Plaintiffs herein incorporate the allegations of paragraphs 1 through 79.

81. Plaintiffs conferred various benefits on BGT and BG (which is a parent company of BG and therefore on information and belief receives substantial benefits based on any benefits conferred upon BGT), including without limitation the transfer of the Evos Software, client lists, goodwill, and other aspects of the Evos Business, along with various services provided under employment agreements (collectively, the "Conferred Benefits"), to BGT.

82. BGT and BG knowingly received, accepted, and/or otherwise benefited from the Conferred Benefits from the Plaintiffs.

83. BGT and BG, however, have failed to fully compensate Plaintiffs for the fair market value of the Conferred Benefits.

84. It is unjust under the circumstances for BGT and BG to retain the Conferred Benefits.

85. Plaintiffs plead unjust enrichment in the alternative to their contract claims in the event any contract is determined to be unenforceable or inapplicable, and/or also because the Court may not be reliably able to determine damages through speculative reconstruction of a



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

hypothetical performance scenario with full contractual compliance by Defendants.

86. As a direct and proximate result of the unjust enrichment of BGT and BG, Plaintiffs have been damaged in the minimum amount of $1,750,000.00 and such other amounts as may be proven at trial, plus post-judgment interest under Section 7.06 of the APA and/or applicable law.

**FIFTH CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

87. Plaintiffs herein incorporate the allegations of paragraphs 1 through 86.

88. Under Florida law, every contract is deemed to contain an implied covenant of good faith and fair dealing.

89. Therefore, each of the APA, the Livernash Employment Agreement, and the Earnout Agreement contained a covenant of good faith and fair dealing under which BGT was obligated to deal with each of the Plaintiffs fairly and in good faith in performing under the parties' agreements.

90. BGT breached the covenant of good faith and fair dealing inherent in the APA, the Livernash Employment Agreement, and the Earnout Agreement through its improper actions and omissions, including without limitation, by: (a) materially breaching the Livernash Employment Agreement as described above, without so much as affording any prior notice to, or consent requested from, Livernash; (b) failing to implement a good-faith system to gather relevant information for, or to provide, quarterly Earnout Statements throughout more than the entire first half of the two-year term under Earnout Agreement in violation of Section 1(f) of the Earnout Agreement (thus depriving Livernash and/or one or more other Plaintiffs of their bargained-for and reasonably expected opportunity to hone their strategies and conduct to



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

maximize Total Net Revenue, as defined by the Earnout Agreement); and/or (c) failing to keep an accurate accounting of Total Net Revenue, as defined by the Earnout Agreement, in violation of Section 1 of the Earnout Agreement (including without limitation Section 1(h)(i) and (ii) thereof), thus depriving Plaintiffs of a critical part of their bargained-for exchange with respect to that portion of the Purchase Price (as defined by the APA) that is subject to the provisions of the Earnout Agreement.

91. As a direct and proximate result of BGT's breach of the implied covenant of good faith and fair dealings, Plaintiffs have been damaged in the minimum amount of $1,750,000.00 and such other amounts as may be proven at trial.

92. Under the express provisions of the Guarantee, BG is directly and primarily liable, together with BGT, for all amounts that BGT owes to Plaintiffs pertaining to the APA, the Livernash Employment Agreement, and the Earnout.

93. As a result of the foregoing, Plaintiffs have been damaged, jointly and severally by BGT and BG, in the amount of $1,750,000.00 and/or such other amount as may be proven, plus post-judgment interest under Section 7.06 of the APA and/or applicable law.

94. Pursuant to Section 8.13 of the APA, Plaintiffs are also entitled to their reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SIXTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Livernash Employment Agreement, Material Breach)**

95. Plaintiff Livernash herein incorporates the allegations of paragraphs 1 through 94.

96. By materially breaching the Livernash Employment Agreement through its conduct, including without limitation, by depriving Livernash of the supervision and



MOTIVATE LAW, LLC
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

responsibility with respect to the Evos Business to which he was entitled under the Livernash Employment Agreement, BGT relieved Livernash of all of his remaining obligations under the Livernash Employment Agreement.

97. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy between the parties concerning whether or not the Livernash Employment Agreement provisions that survive termination of the termination of employment may continue to apply as against Livernash.

98. Pursuant to 28 U.S.C. §§ 2201 et seq. Livernash is entitled to a declaratory judgment declaring that Livernash is not bound by any obligations of the Livernash Employment Agreement, including, without limitation, the restrictive covenants that were otherwise applicable under Section 8 thereof.

99. The Livernash Employment Agreement is integrated into the APA under Section 8.05 thereof. Pursuant to Section 8.13 of the APA, Livernash is also entitled to his reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SEVENTH CLAIM FOR RELIEF**

Declaratory Judgment – Livernash Employment Agreement, ORS 653.295

100. Plaintiff Livernash herein incorporates the allegations of paragraphs 1 through 99.

101. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy between the parties concerning the enforceability of the noncompetition restrictions contained in Section 8.2 of the Employment Agreement.

102. Livernash was, at all relevant times, a resident of Oregon, performed his



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

employment primarily in Oregon, and was employed in Oregon within the meaning of Oregon's noncompetition statutes.

103. Livernash's employment with BGT terminated by notice given to BGT on or around October 30, 2025.

104. Section 8.2 of the Livernash Employment Agreement purports to restrict Livernash from engaging in competitive activity for twelve (12) months following the termination of his employment.

105. ORS 653.295(1)(d) provides that a noncompetition agreement is void and unenforceable unless the employer provides the employee with a signed, written copy of the terms of the noncompetition agreement within thirty (30) days after the date of termination of employment.

106. BGT did not provide Livernash with a signed, written copy of the noncompetition agreement for purposes of satisfying the requirement of ORS 653.295(1)(d).

107. As a result of BGT's failure to comply with ORS 653.295(1)(d), the noncompetition restrictions contained in Section 8.2 of the Livernash Employment Agreement are void and unenforceable as a matter of Oregon law.

108. Although the Employment Agreement contains a Florida choice-of-law provision, Oregon law governs the enforceability of the noncompetition provisions pursuant to ORS 15.320(3), which mandates application of Oregon law where: the employee is primarily employed in Oregon, and application of another state's law would permit enforcement of a noncompetition agreement that is void under Oregon law.

109. Application of Florida law to enforce the noncompetition provisions would contravene Oregon's fundamental public policy embodied in ORS 653.295.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

110. The Livernash Employment Agreement asserts that the noncompetition restrictions continue to apply against Plaintiff at present despite applicable law indicating the contrary; this creates a concrete and immediate controversy regarding Plaintiff's right to engage in lawful employment and business activities.

111. Plaintiff seeks a judicial declaration to confirm that the noncompete provisions in the Livernash Employment Agreement are void and unenforceable, and no adequate remedy at law exists to fully and finally resolve this controversy absent declaratory relief.

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Material Breach of the APA Excuses Plaintiffs from Further Performance)**

112. Plaintiffs herein incorporates the allegations of paragraphs 1 through 111.

113. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy concerning the parties' respective rights and obligations under the APA.

114. Plaintiffs and BGT are parties to the APA, which governs the acquisition of certain assets and includes ongoing and post-closing obligations, including restrictive covenants and other provisions Defendants contend remain enforceable against Plaintiffs.

115. As alleged above, BGT materially breached the APA, including but not limited to by failing to perform obligations that went to the essence of the parties' bargain and deprived Plaintiffs of substantial benefits reasonably expected under the APA.

116. BGT's breaches were material, were not merely technical or incidental, and defeated the essential purpose of the APA.

117. Plaintiffs were not in material breach of the APA at the time of BGT's breaches and have either substantially performed their own obligations or were excused from further



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

performance by BGT's prior material breach.

118. Under applicable contract law, a party that commits a material breach of an agreement may not enforce remaining executory provisions of that agreement against the non-breaching party, and the non-breaching party is excused from further performance.

119. Certain provisions of the APA that are directed at Plaintiffs, including but not limited to noncompetition, non-solicitation, restrictive, and other post-closing obligations, are executory, forward-looking provisions that depend on the continued enforceability of the APA.

120. Because of BGT's material breach, Defendants are barred from enforcing any APA provisions against Plaintiffs, including but not limited to restrictive covenants, noncompetition provisions, and other post-closing obligations.

121. A declaratory judgment will clarify and settle the legal relations between the parties, terminate doubt over whether or not the various restrictive covenants and other provisions directed at the Plaintiffs under the APA continue to apply, and will prevent multiplicity of actions regarding the enforceability of the APA.

122. Plaintiffs seek declaratory relief without rescinding the APA, and in a manner fully consistent with Plaintiffs' claims for damages arising from Defendants' past breaches.

123. Plaintiffs seek declaratory relief in connection with the enforcement and interpretation of the APA and related Transaction Documents, and are therefore entitled to recover their reasonable attorneys' fees and costs pursuant to Section 8.13 of the APA.

**NINTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Promissory Note)**

124. Plaintiffs herein incorporate the allegations of paragraphs 1 through 123.

125. In accordance with Section 1.05(ii) and other provisions of the APA, the



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Transaction Documents also included a Promissory Note (the "Promissory Note") made by BGT in favor of Plaintiffs, dated February 29, 2024 in the original principal amount of $590,000.00 (the "Deferred Purchase Price").

126. Under Section 4.5 of the Heuer Agreement, any Conversion Surplus arising in connection with the APA and the Heuer Agreement shall automatically increase the amount of the Deferred Purchase Price owing under the APA.

127. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy concerning the current balance due under the Promissory Note.

128. Pursuant to 28 U.S.C. §§ 2201–2202, Plaintiffs are entitled to a declaratory judgment declaring that the amount of the Deferred Purchase Price under Section 1.05(ii) of the APA, and thus the corresponding balance of the Promissory Note automatically increased by $100,000 (based on the existence and amount of the Conversion Surplus) as of the expiration of the term of the Heuer Employment Agreement on or around February 28, 2025.

129. Pursuant to Section 8.13 of the APA, Plaintiffs are also entitled to their reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this claim.

**TENTH CLAIM FOR RELIEF**

(Tortious Interference with Contract)

130. Plaintiffs herein incorporate the allegations of paragraphs 1 through 129.

131. In terminating Ratzki and taking steps to demote Livernash's role and responsibility, BG, with knowledge of the contractual relationships between Plaintiffs and BGT, intentionally interfered with the Earnout Agreement, the Livernash Employment Agreement, and



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

related documents arising under the APA, causing harm to Plaintiffs.

132. BG employed improper means in interfering with Plaintiffs' contractual relationship with BGT, and induced BGT to breach such contractual relationship in multiple ways, including but not limited by directing and authorizing conduct that it knew (or should have known) violated express contractual covenants, intentionally inducing breaches of the Earnout Agreement and Livernash Employment Agreement, and exercising control over BGT in a manner calculated to deprive Plaintiffs of contractual benefits.

133. As a proximate cause of BG's tortious interference, Plaintiffs have been damaged in an amount to be determined at trial.

**ELEVENTH CLAIM FOR RELIEF**

(Equitable Accounting)

134. Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 133, as though fully set forth herein.

135. Defendants BGT and BG exclusively control, maintain, and possess the books, records, internal financial systems, customer data, pricing inputs, affiliate allocations, and revenue attribution methodologies necessary to determine the amounts owed to Plaintiffs under the Earnout Agreement, the APA, and related Transaction Documents.

136. The Earnout Agreement expressly requires Defendants to calculate and report revenues in accordance with detailed contractual standards, including but not limited to: attribution of revenue derived from existing customer accounts, application of Historical Pricing Adjustment principles, and Good-Faith Revenue Maximization obligations.

137. Despite these contractual obligations, Defendants have failed to maintain and provide a transparent, complete, and verifiable accounting of revenues derived from the Evos



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Business and the Purchased Assets.

138. Although Defendants have periodically transmitted unilateral quarterly statements, those statements lack underlying transactional detail, omit material categories of attributable revenue for purposes of the eventual Earn-Out payment, fail to disclose internal pricing and allocation assumptions, do not reconcile affiliate usage or internal transfers, and do not permit Plaintiffs to independently verify compliance with the Earnout Agreement.

139. Defendants have further failed and refused to engage in any meaningful, good-faith dialogue regarding Plaintiffs' repeated, specific inquiries about revenue attribution, pricing methodology, affiliate usage, and compliance with the Earnout Agreement, despite occasionally representing that they would do so.

140. Defendants' pattern of conduct reflects not a mere disagreement over calculations, but a systematic withholding of material financial information necessary for Plaintiffs to determine whether Defendants have complied with their contractual obligations.

141. Plaintiffs do not have access to Defendants' internal accounting systems, affiliate billing records, pricing decision-making, customer segmentation data, or internal revenue allocation policies, and cannot determine the full amounts owed without court-ordered disclosure and reconciliation.

142. Because the relevant financial information is solely within Defendants' possession and control, Plaintiffs lack an adequate remedy at law to determine the amounts owed absent an equitable accounting.

143. The limited dispute-resolution mechanism set forth in Section 3 of the Earnout Agreement does not bar or displace this claim, as it applies only to a narrow post-term calculation of the final Earn-Out amount, does not address pre-payment breaches, bad-faith



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

performance, or repudiation, does not require Plaintiffs to accept Defendants' unilateral figures as presumptively accurate, and is subject to judicial enforcement per Section 5.5 of the Earnout Agreement.

144. An equitable accounting is necessary in this case to compel full disclosure of all revenues derived from the Purchased Assets, require Defendants to apply the correct contractual standards, reconcile affiliate usage and pricing adjustments, determine the true Earnout amounts owed, and prevent Defendants from continuing to benefit from information asymmetry.

145. Plaintiffs seek an accounting not merely as an evidentiary aid, but as an equitable remedy requiring Defendants to affirmatively account for and reconcile all revenues, costs, and calculations relevant to the Earnout, followed by entry of judgment for all amounts determined to be due.

146. Pursuant to Section 5.9 of the Earnout Agreement, and Section 8.13 of the APA (which integrates the Earnout Agreement into the overall asset purchase deal), Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, and costs incurred in obtaining an equitable accounting and prosecuting this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

**A. Compensatory Damages**

1. For compensatory damages in favor of Plaintiff Thomas Livernash and against Defendants Blue-Grace Technologies LLC and Blue-Grace Group LLC, jointly and severally, for breach of the Livernash Employment Agreement, in an amount to be determined at trial,



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

but not less than $150,000, together with prejudgment and post-judgment interest as allowed by law.

2. For compensatory damages in favor of Plaintiffs and against Defendants, jointly and severally, for breach of the Earnout Agreement, including expectancy, reliance, and consequential damages, in an amount to be determined at trial, but not less than $1,500,000, together with prejudgment and post-judgment interest as allowed by law.

3. For compensatory damages in favor of Plaintiffs and against Defendants, jointly and severally, for breach of the Asset Purchase Agreement, including damages arising from anticipatory repudiation of purchase-price obligations, in an amount to be determined at trial, together with prejudgment and post-judgment interest.

**B. Declaratory Relief**

4. For a declaration that Defendants materially breached the Livernash Employment Agreement and that, as a result, Plaintiff Thomas Livernash is excused from further performance and is not bound by any post-termination obligations, including any restrictive covenants.

5. For a declaration that the noncompetition provisions of the Livernash Employment Agreement are void and unenforceable under ORS 653.295 and ORS 15.320.

6. For a declaration that Defendants materially breached the Asset Purchase Agreement and that, as a result, Plaintiffs are excused from further performance and Defendants are barred from enforcing any executory provisions of the APA, including restrictive covenants.

7. For a declaration determining the correct balance due under the Promissory Note, including a declaration that the Deferred Purchase Price increased by $100,000 as a result of the Conversion Surplus.



**MOTIVATE LAW, LLC**
**4800 Meadows Rd Ste 300**
**Lake Oswego, OR 97035**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

**C. Equitable Relief**

8. For an equitable accounting requiring Defendants to disclose, produce, and reconcile all books, records, internal financial data, pricing inputs, affiliate allocations, and revenue attribution information necessary to determine the amounts owed under the Earnout Agreement and related Transaction Documents, followed by entry of judgment for all amounts determined to be due.

**D. Attorney Fees and Costs**

9. For an award of reasonable attorneys' fees, expert fees, and costs of suit to the extent permitted by contract and applicable law, including but not limited to:

(a) Section 8.13 of the Asset Purchase Agreement;

(b) Section 5.9 of the Earnout Agreement;

(c) the Guarantee; and

(d) any applicable statutory or equitable basis.

**E. Other Relief**

10. For such other and further relief as the Court deems just and proper.

Dated: December 31, 2025

MOTIVATE LAW, LLC

s/ Michael Litvin

Michael Litvin, Attorney
OSB No. 111211
4800 Meadows Rd Ste 300
Lake Oswego, OR 97035
ML@motivatelaw.com
(503) 446-2667
*Attorney for Plaintiffs*