IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

SMARTYPANTS INDUSTRIES, INC., formerly known as EVOS LOGISTICS, INC., an Oregon corporation; THOMAS LIVERNASH, an individual; LESLIE LIVERNASH, an individual; and JAMES S. HEUER, an individual,

Plaintiffs,

v.

BLUE-GRACE TECHNOLOGIES LLC, a Florida limited liability company; and BLUE-GRACE GROUP LLC, a Delaware limited liability company,

Defendants.

Civ. No. 6:25-cv-02232-AA

**OPINION & ORDER**

---

AIKEN, District Judge:

Plaintiffs SmartyPants Industries, Inc., Thomas Livernash, Leslie Livernash, and James S. Heuer (collectively, "Plaintiffs") bring a breach of contract suit in diversity against Defendants Blue-Grace Group LLC and Blue-Grace Technologies LLC (collectively, "Defendants"). First Am. Compl. ("FAC"), ECF No. 6. Before the Court is Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. For the following reasons, Defendants' Motion, ECF No. 8, is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff Smartypants Industries, Inc., formerly Evos Logistics, Inc., ("Evos") is an Oregon corporation with its principal place of business in Deschutes County, Oregon. FAC ¶ 1. Individual Plaintiffs are residents of the state of Oregon. *Id.* ¶¶ 2–4. Defendants Blue-Grace Group LLC ("BG") and Blue-Grace Technologies LLC ("BGT") are Florida corporations with their principal places of business in Hillsborough County, Florida. *Id.* ¶¶ 5–6. BG is parent company of BGT. Def. Mot. at 20.

Over the course of about 20 years, Evos developed a set of web-based transportation software tools ("Evos software") that it sold on a subscription basis, "software as a subscription" ("SaaS"). FAC ¶¶ 11, 12. Evos sold software subscriptions to "shippers, transportation service providers, consulting firms and other software firms that provide or utilize the services of the industrial transportation industry, including . . . load planning and optimization." *Id.* ¶ 12. In 2022, BG became an Evos SaaS customer. *Id.* ¶ 13. Ultimately, Defendants offered to purchase the Evos business. *Id.* ¶¶ 13, 14.

On February 29, 2024, Evos ("Seller") sold its business to BGT ("Buyer"). *Id.* ¶ 14. The sale included the Evos software and "substantially all of the assets used in [Evos'] business operations." *Id.*

On February 29, 2024, the parties executed an Asset Purchase Agreement ("APA"). *Id.*, Notice of Removal, Ex. B, APA, ECF No. 1-2. The APA included several ancillary agreements, executed on the same day: the Earn-Out Agreement (Notice of

Removal, Ex. C, ECF No. 1-3), the Livernash Employment Agreement (*id.*, Ex. D, ECF No. 1-4), the Heuer Employment Agreement (*id.*, Ex. E, ECF No. 1-5), and the Guarantee (*id.*, Ex. B, ECF No. 1-2 at 72).[1] FAC ¶¶ 14–16.

Plaintiffs allege that Defendants breached the APA, the Earn-Out Agreement, and the Livernash Employment Agreement.

Under the APA, Seller sold to Buyer the Evos-developed transportation software tools (including the Evos PlanTools and BidTools) and "substantially all of the assets used in its business," including Evos customers lists, and Evos goodwill. *Id.* ¶ 14, APA § 1.01; Earn-Out Agreement B. The purchase price consisted of three parts: (1) "Base Consideration" of $1,500,000 paid to Plaintiffs at closing or shortly afterward; (2) "Deferred Purchase Price" of $590,000 as promissory note payable over three years; and (3) potential "Earn-Out" of $1,500,000, dependent on the financial performance of the Evos software assets as provided in the Earn-Out Agreement. [2]

---

[1] These Agreements, which Defendants attached to the Notice of Removal, ECF No. 1, are incorporated by reference into the complaint because they form the basis of the complaint, and Plaintiffs refer extensively to them. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

[2] "An 'earnout' or 'earn-out' provision in a contract for the acquisition of a business provides that the seller is to obtain additional future compensation based on the business achieving certain future earnings levels or other goals." *Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.*, 889 So. 2d 180, 187 n.6 (Fla. Dist. Ct. App. 2004).

*Id.* ¶¶ 17, 125; APA § 1.05. "[A] material portion of the total purchase price . . . was made subject to the terms of the Earnout Agreement." *Id.* ¶ 17.

Plaintiffs allege that Defendants breached the Earn-Out Agreement. The Earn-Out Agreement set a two-year Earn-Out Period, beginning on February 29, 2024, and running until February 28, 2026. *Id.* ¶¶ 15, 90, 44; Earn-Out Agreement § 1(a). Under the Earn-Out Agreement, Buyer was to credit Seller for the Total Net Revenue derived from the sales of the Evos software subscription products during the two year Earn-Out Period with a maximum Earn-Out amount of $1,500,000 due to Seller at the end of the two year Earn-Out Period. *Id.* ¶¶ 35–37; Earn-Out Agreement § 1(a)–(d). The Earn-Out Agreement required Buyer to provide quarterly Earn-Out statements to Seller. *Id.* ¶ 32; Earn-Out Agreement § 1(f). Plaintiffs allege that Buyer failed to provide quarterly statements for the first year of the two-year Earn-Out Period. *Id.* ¶¶ 33–35. "In or around fall of 2024," Seller notified Buyer that Buyer had failed to deliver any quarterly statements. *Id.* ¶ 33. After receiving no response, "on or around January 24, 2025," Seller "delivered multiple formal notices of breach" of the APA to Buyer. *Id.* ¶ 34. Plaintiffs allege that they then received "several purported quarterly Earnout statements" from Buyer. *Id.* ¶ 35. But Plaintiffs allege that the statements "are inaccurate and significantly undercount earnout revenues accruing to the benefit of [Seller]." *Id.* Plaintiffs allege that the statements are inaccurate in part because they violate certain accounting principles stipulated in the Earn-Out Agreement. *Id.* ¶¶ 35–37.

Plaintiffs also allege that Defendants breached the Livernash Employment Agreement. Plaintiffs allege that "[a]s material inducement for Plaintiffs to enter into the Earnout Agreement, and to help maximize the value of the Evos Software as a SaaS product[,] . . . BGT extended the Livernash Employment Agreement to Livernash[] and the Heuer Employment Agreement to Heuer." *Id.* ¶ 17. Under the Livernash Employment Agreement, Livernash was hired by BGT on March 1, 2024, for an Employment Term of two years, the duration of the Earn-Out Period. Livernash Employment Agreement § 1. Livernash was hired to work in BGT's Technology Department as a "salesperson, account manager, and/or consultant" and to supervise and manage sales of Evos products. *Id.* ¶¶ 18, 19, 25, 26; Livernash Employment Agreement §§ 2.1, 2.2, Schedule 2.1. Plaintiffs allege that on April 30, 2024, two months after closing, BG demoted Livernash by removing the supervision and management of Evos software sales from Livernash and giving it to BG personnel outside of BGT's Technology Department who were not familiar with how to sell and manage the Evos products ("Asset Management Transfer"). *Id.* ¶¶ 25, 26, 28.

Plaintiffs also assert breach of the APA and other state law claims against Defendants.

On October 30, 2025, Plaintiffs filed this action in the Deschutes County Circuit Court, Oregon. Notice of Removal, ECF No. 1. On December 3, 2025, Defendants removed the case to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. *Id.* Defendants now move to dismiss Plaintiffs' claims.

## LEGAL STANDARDS

A party may challenge a court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "Whether a claim is ripe for adjudication goes to a court's subject matter jurisdiction under the case or controversy clause of article III of the federal Constitution." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1)." *Id.* "Plaintiffs bear the burden of proving that their claim is ripe[.]" *Meland v. Weber*, 2 F.4th 838, 849 (9th Cir. 2021). If a claim is not ripe for adjudication, the court lacks subject-matter jurisdiction and must dismiss the claim. *St. Clair*, 880 F.2d at 204.

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's allegations, a court must accept a plaintiff's allegations of fact as true and construe them in the light most favorable to the plaintiff. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A complaint need not state "detailed factual allegations," but must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

## DISCUSSION

Plaintiffs allege breach of the Earn-Out Agreement, the Livernash Employment Agreement, and the APA. Plaintiffs also bring claims of unjust enrichment, breach of the implied covenant of good faith and fair dealing, and tortious interference with contract. Plaintiffs seek compensatory damages, declaratory relief, and equitable accounting.

Defendants move to dismiss the claims for lack of ripeness under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Fed. R. Civ. P. 12(b)(1), (b)(6).

I. *Ripeness*

Defendants move to dismiss the Second, Third, Fourth, Fifth and Eighth claims for lack of ripeness.

Article III requires that a plaintiff's claim be ripe for adjudication. *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021). "The ripeness doctrine, which aims to avoid premature and potentially unnecessary adjudication, 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Id.* However, courts "do not analyze the prudential component of the ripeness inquiry in private contract litigation." *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086–87 (9th Cir. 2015).

Constitutional ripeness is satisfied where the plaintiff's "stake in the legal issues is concrete rather than abstract[.]" *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009). A private contract claim is ripe if it presents "a

substantial controversy between parties having adverse legal interests that savors of sufficient immediacy and reality to warrant resolution." *Golden,* 782 F.3d at 1088. "[W]hen a litigant resists his adversary's attempt to enforce a contract against him, the dispute has already completely materialized." *Id.*

Plaintiffs' Second Claim alleges that BGT breached the Earn-Out Agreement. Defendants contend that the claim is not ripe because the Earn-Out calculation is a future event.[3] Def. Mot. at 6. Defendants also contend that Plaintiffs' Third, Fourth, Fifth, and Eighth Claims are not ripe because they are "factually intertwined with Plaintiffs' claim for breach of the Earn-Out Agreement." *Id.* at 7.

Plaintiffs respond that they do not allege issue with the Earn-Out calculation—a future event; they allege "present and ongoing breaches[.]" Pl. Resp. at 9, ECF No. 9. They allege that BGT breached the Earn-Out Agreement by failing to provide quarterly statements and then by providing statements that were not "true, accurate, complete, [or] Agreement-compliant." FAC ¶¶ 60, 32–37, 42–51. Plaintiffs also allege that Defendants' demotion of Livernash breached the Earn-Out Agreement's implied covenant of good faith and fair dealing because Plaintiffs were induced to enter into the Earn-Out Agreement by BGT's hire of Livernash and his management and supervision of the Evos assets. *Id.* ¶¶ 17–19, 27–30, 57–59; Pl. Resp. at 14–15.

In sum, the alleged breach of the Earn-Out Agreement stems from actions of an adverse party that have already occurred—failure to provide quarterly statements

---

[3] Plaintiffs filed the Complaint on December 3, 2025, ECF No. 1, and the FAC on December 31, 2025, ECF No. 6. The Earn-Out calculation was due February 28, 2026.

and demotion of Livernash, which Plaintiffs allege resulted in financial injury. The alleged breach is thus real, immediate, and adverse, and so it is ripe for adjudication. To the extent that the alleged breach adversely affects the other "intertwined" agreements, those disputes are also ripe for adjudication.

Accordingly, Defendants' Motion to Dismiss for lack of ripeness is denied. Defendants' objections to the sufficiency of Plaintiffs' claims are considered under Rule 12(b)(6).

## II. *The Governing Law*

Each of the four Agreements contains an express choice of law clause that designates the State of Florida's law as the governing law. *See* Ex. B, APA § 8.10; Ex. C, Earn-Out Agreement § 5.5; Ex. D, Livernash Employment Agreement § 15; Ex. E, Heuer Employment Agreement § 15.

The parties do not dispute that Florida law governs the Agreements except as to the noncompete clause in the Livernash Employment Agreement, which is Plaintiffs' Seventh Claim. FAC ¶¶ 100–111. Defendants do not challenge the Seventh Claim in this Motion, so the Court need not address the law that governs Livernash's noncompete clause.

## III. *Sufficiency of the Claims*

Defendants challenge the sufficiency of Plaintiffs' Second, Third, Fourth, Fifth, Sixth, Eighth, Tenth, and Eleventh Claims under Federal Rule of Civil Procedure 12(b)(6). Def. Mot. at 8, 14, 15, 16, 17, 18, 21.

A. *Second Claim – Breach of the Earn-Out Agreement*

Plaintiffs' Second Claim alleges that Defendants breached the Earn-Out Agreement by (1) failing to provide quarterly statements in breach of the Agreement's express obligation to do so FAC ¶¶ 61–62; (2) failing to provide quarterly statements in breach of the Agreement's implied duty of good faith and fair dealing, *id.* ¶ 60; (3) failing to provide quarterly statements that are true, accurate, complete, and compliant in breach of the Agreement's express warranty, *id.* ¶ 60; (4) demoting Livernash and transferring Evos assets from his supervision and management in breach of the Agreement's implied duty of good faith and fair dealing, *id.* ¶¶ 57–59; (5) unilaterally re-interpreting a term in anticipatory repudiation of the Agreement, *id.* ¶¶ 63–65.

Defendants contend that Plaintiffs' Second Claim fails because (1) the Agreement's dispute resolution clause exclusively governs the dispute, Def. Mot. at 8; (2) the claim "fail[s] to sufficiently allege damages," *id.* at 10; (3) the claim fails to allege sufficient facts, *id.* at 11; (4) the claim fails to allege anticipatory repudiation, *id.* at 12; and (5) the claim is duplicative, *id.* at 9.

1. *The dispute resolution clause does not govern the breach claims.*

Defendants contend that Plaintiffs' Second Claim fails because the Earn-Out Agreement's dispute resolution clause "expressly makes the Auditor's determination the exclusive remedy for Earn-Out disagreements." *Id.* at 9.

Under the APA and the Earn-Out Agreement, BGT ("Buyer") agreed to purchase Plaintiffs' ("Seller's") "Business," which included Seller's "web-based

transportation software tools," customer lists, and goodwill. APA § 1.01; Earn-Out Agreement B. Under the APA, the Total Purchase Price included an Earn-Out component of up to $1,500,000, subject to the terms of the Earn-Out Agreement. APA § 1.05. Under the Earn-Out Agreement, Buyer was to determine the Earn-Out amount at the end of the two-year Earn-Out Period, February 28, 2026. Earn-Out Agreement § 1. The Earn-Out amount is based on the financial performance of the Evos business assets—the "Total Net Revenue" generated by those assets—during the two-year Earn-Out Period. *Id.*

The Earn-Out Agreement contains a dispute resolution clause:

> **Resolution of Dispute.** If the Seller Parties dispute Buyer's calculation of the Earn-Out or seek additional information from Buyer to confirm the accuracy thereof, the Seller Parties shall so notify Buyer in writing within fifteen (15) days after receipt of any relevant Earn-out amount. In the event that Buyer and Seller Parties fail to amicably resolve the dispute within sixty (60) days of it arising, Buyer and the Seller shall then submit the matter to a nationally recognized certified public accounting firm ("**Auditor**")[.] . . . Auditor shall submit its written calculation of the Earn-Out to the parties within thirty (30) days of the submission or as otherwise mutually agreed upon by the parties. If Auditor's calculation shows the Earn-Out to be equal to or less than the amount determined by Buyer, then the Seller Parties shall pay Auditor's fees and expenses. If Auditor's calculation shows the Earn-Out to be greater than the amount determined by Buyer, then Buyer shall pay Auditor's fees and expenses.

Earn-Out Agreement § 3.

Under Florida law, "[w]hen the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. Dist. Ct. App. 2011).

By its plain language, the dispute resolution clause does not provide "the exclusive remedy for Earn-Out disagreements." First, the clause is an auditor's provision, which is more limited in scope than an arbitration provision. *See Prestige Protective Corp. v. Burns Int'l Sec. Servs. Corp.*, 776 So. 2d 311, 313 (Fla. Dist. Ct. App. 2001) (even though the scope of an auditor's dispute resolution authority is more limited than that of an arbitrator, Florida courts analyze and enforce agreements similarly). Second, the clause identifies the scope as "dispute [of] Buyer's calculation of the Earn-Out." Under the Earn-Out Agreement, that calculation is not due until the end of the two-year Earn-Out Period. Earn-Out Agreement § 1. Third, the clause identifies a trigger. The clause is not triggered unless and until Seller disputes the Earn-Out calculation *after* Seller receives that calculation from Buyer at the end of the two-year Earn-Out Period. The parties do not dispute that the Earn-Out Period was to be completed on February 28, 2026, and had not been completed at the time that Plaintiffs filed the Complaint or the FAC (December 2025). FAC ¶ 44; Def. Mot. at 3.

In sum, the clause's plain language limits the scope of the Auditor's role to resolving disputes over the Earn-Out calculation. The scope does not include disputes about whether the Earn-Out Agreement has been breached. And the scope does not include disputes over calculations other than the Earn-Out calculation. Had the parties intended that an auditor resolve disputes over other calculations, such as those reported in the quarterly statements, they could have included such language in the dispute resolution clause.

Under Florida law, "[w]here the language of a contract is clear and unambiguous, the court can give to it no meaning other than that expressed." *Wellington Realty Co. v. ColorAll Techs. Int'l, Inc.*, 951 So. 2d 921, 922 (Fla. Dist. Ct. App. 2007). Further, under Florida law, dispute resolution provisions, whether auditor provision or arbitration provision, are interpreted narrowly. "[A]rbitration is mandatory only where the subject matter of the controversy falls within what the parties have agreed will be submitted to arbitration." *Ocwen Fed. Bank FSB v. LVWD, Ltd.*, 766 So.2d 248, 249 (Fla. Dist. Ct. App. 2000). "[I]t is the language of the agreement that defines the scope of an arbitration agreement." *Citigroup, Inc. v. Amodio*, 894 So. 2d 296, 298–99 (Fla. Dist. Ct. App. 2005). "[C]onstruction of an arbitration clause remains subject to the contract law requirement 'that the court discern the intent of the parties from the language used in their agreement.'" *Fla. Env't Servs., Inc. v. Rentoumis*, 950 So. 2d 466, 470 (Fla. Dist. Ct. App. 2007) (applying an auditor dispute resolution provision) (quoting *Citigroup, Inc.*, 894 So.2d at 298).

Defendants point to *Prestige Protective Corp. v. Burns Int'l Sec. Servs. Corp.*, 776 So. 2d 311, 313 (Fla. Dist. Ct. App. 2001) to support their contention that the dispute resolution clause governs here. Defendants contend that a similar clause in *Prestige Protective Corp.* "is highly analogous to the one here." Def. Reply at 2, ECF No. 10. However, both the clause and the facts of the case are distinguishable. First, the case applies Illinois, not Florida, law. *Prestige Protective Corp.*, 776 So. 2d at 313. But that does not affect the Court's analysis since the interpretation of a dispute resolution clause under Illinois law appears to be substantially the same as under

Florida law. Second, the clause contains broader language than the clause here. At issue in *Prestige Protective Corp.* was an asset purchase agreement that provided for Buyer to pay by promissory note a year after closing the purchase price due to Seller. *Id.* at 312. The amount owed to Seller was tied to the "Customer Retention Percentage," *i.e.*, the percentage of Seller's customers that remained with Buyer after a year. *Id.* The dispute resolution clause provided:

> Buyer . . . shall prepare and deliver to Seller . . . a reasonably detailed report computing the Account Revenues, the Customer Retention Percentage and the principal amount of any payment due hereunder. Within 5 days after delivery of such report, Seller shall notify Buyer of its concurrence to such determinations or its disagreement with such determinations. In the event that the parties cannot resolve *any disagreement as to any amount(s)* due under this paragraph within a reasonable period of time, such amount(s) will be determined by Deloitte & Touche LLP, whose fees and expenses will be paid by the non-prevailing party and whose determination will be final and binding.

*Id.* at 312–13 (emphasis added). The clause thus contains broader language than the clause at issue: "any disagreement as to any amount(s) due." But, more importantly, the facts are distinguishable. There, the seller raised a dispute as to the amount he was due *after* receiving the accounting report at the end of the accounting period, a year after closing. *Id.* at 313. The seller's dispute fell within the express scope of the clause and triggered the clause as it provided. Here, Plaintiffs had not received the Earn-Out calculation because the Earn-Out Period had not yet run. Instead, Plaintiffs allege breach of the Agreement on other grounds. *Prestige Protective Corp.* is thus distinguishable and does not help Defendants.

Finally, here, the Earn-Out Agreement designates specific judicial forums for the resolution of disputes that arise under the Agreement:

> Any action or proceeding by any of the parties herein to enforce this Agreement shall be brought only in (a) the federal courts of the United States of America, (b) the courts of the State of Florida, county of Hillsborough, or (c) the courts of the State of Oregon in each case located in the city of Bend and county of Deschutes.

Ex. C, Earn-Out Agreement § 5.5. Had the parties intended to make "the Auditor's determination the exclusive remedy for Earn-Out disagreements," as Defendants contend, the parties would not have designated judicial forums to resolve disputes that arise under the Agreement. "Courts are required to construe a contract as a whole and give effect, where possible, to every provision of the agreement." *Anarkali Boutique, Inc. v. Ortiz*, 104 So. 3d 1202, 1205 (Fla. Dist. Ct. App. 2012).

In sum, the Court concludes that the Earn-Out Agreement's auditor dispute resolution clause does not govern a dispute over whether Defendants breached their obligation to provide quarterly statements. Nor does it govern the other alleged breaches.

2. *Plaintiffs state a claim for breach of the Earn-Out Agreement.*

Defendants contend that Plaintiffs fail to state a claim for breach of the Earn-Out Agreement because they do not sufficiently allege damages. Def. Mot. at 10–11.

To survive a motion to dismiss, a pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts do not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To state a breach of contract claim in Florida, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages." *Abbott Lab'ys, Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. Dist. Ct. App. 2000).

Plaintiffs allege that "BGT completely failed to provide all quarterly statements that were due for the period between February 29, 2024 and December 20, 2024[.]" FAC ¶ 61. The Agreement provides that:

> Buyer shall provide Seller with quarterly statements throughout the term of this Agreement calculating Total Net Revenue (collectively, the "**Earn-out Statements**"). Buyer represents and warrants that each of the Earn-out Statements shall be true, accurate, complete, and fully compliant with the provisions of this Agreement.

Earn-Out Agreement § 1(f) (bold in original).

Plaintiffs allege the existence of a contract and the express term that BGT breached. Plaintiffs also allege compensatory damages resulting from breach of the Earn-Out Agreement of "not less than $1,500.000[,]" the maximum amount Plaintiffs could have earned under the Earn-Out. FAC at (page) 30. Defendants contend that "Plaintiffs offer no plausible theory connecting the absence of quarterly statements to the sweeping damages claimed." Def. Mot. at 11. Plaintiffs allege that because they did not receive quarterly statements for the first year of the two-year Earn-Out Period, they were "depriv[ed] . . . of their bargained-for opportunity to verify . . . whether BGT was abiding by the Earnout Agreement terms" and of the opportunity "to tailor their efforts to best maximize Total Net Revenue under the Earnout Agreement." FAC ¶ 62.

"Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. Accepting Plaintiffs' facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that, as to Plaintiffs' claim that BGT breached the Earn-Out Agreement, Plaintiffs have alleged a plausible mechanism of harm and basis for damages.

3. *Plaintiffs state a breach of express warranty claim.*

Defendants contend that Plaintiffs fail to allege sufficient facts to state a breach of express warranty claim. Def. Mot. at 11.

In Florida, an express warranty is defined as "[a] statement or representation made by the seller of goods, contemporaneously with, and as a part of the contract of sale, though collateral to the express object of it, having reference to the character, quality or title of the goods, and by which he promises or undertakes to [e]nsure that certain facts are or shall be as he then represents them." *Weimar v. Yacht Club Point Ests., Inc.*, 223 So. 2d 100, 104 (Fla. Dist. Ct. App. 1969) (internal citation and quotation marks omitted). To state a breach of warranty claim, a plaintiff must plead (1) facts giving rise to the warranty; (2) reliance on the warrantor's representations; (3) circumstances of the injury caused by the breach of warranty; (4) notice of breach of warranty; (5) injuries sustained and damages. *Id.*

The Earn-Out Agreement expressly provides: "Buyer represents and warrants that each of the Earn-out Statements shall be true, accurate, complete, and fully compliant with the provisions of this Agreement." Earn-Out Agreement § 1(f).

Plaintiffs allege facts giving rise to the warranty; that they relied on the warranty; and that BGT breached the warranty by failing "to provide quarterly statements that were true, accurate, complete, and fully compliant" with the Earn-Out Agreement. FAC ¶ 60. Plaintiffs allege "on information and belief that the . . . quarterly Earnout Statements are violative of the principles of Historical Pricing Adjustment . . . and the Good-Faith Revenue Maximization" as provided by the Earn-Out Agreement. *Id.* ¶¶ 35–37 (citing the Earn-Out Agreement § 1(h)(i), (ii)).

Defendants contend that Plaintiffs' breach of warranty claim fails to allege sufficient facts and is conclusory and speculative, apparently because Plaintiffs base one of their allegations "on information and belief." Def. Mot. at 11. Defendants rely on *Talk Radio Network Enters. v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1207 (D. Or. 2017) for their proposition that Plaintiffs' statements "are precisely the type of conclusory, speculative, 'information-and-belief' statements that courts have deemed insufficient to state a claim." Def. Mot. at 12. However, *Talk Radio Network* differs from the case here. In *Talk Radio Network*, the plaintiff broadly alleged misconduct but failed to provide "factual assertions that would plausibly allow the Court to draw the inference that [the defendants] failed to act in a commercially reasonable manner." *Talk Radio Network*, 271 F. Supp. 3d at 1205–06. For example, the plaintiff alleged that the defendants had breached their agreement by failing to pay advertising revenue but failed to allege "specific facts regarding payments that were or were not made[.]" *Id.* at 1204.

Unlike *Talk Radio Network*, Plaintiffs here allege a contract, express contract term, and the who, what, when, and how of the alleged misconduct—breach of the Earn-Out Agreement's express warranty.

At the motion to dismiss stage, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The pleading standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Accepting Plaintiffs' facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have stated a breach of express warranty claim.

4. *Plaintiffs fail to state an anticipatory repudiation claim.*

Defendants contend that Plaintiffs fail to state an anticipatory repudiation claim. Def. Mot. at 12.

In Florida, "[a]n anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-CV-2422-T-27TBM, 2018 WL 794795, at *4 (M.D. Fla. Jan. 23, 2018) (internal citation and quotation marks omitted). "Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Id.* (quoting *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. Dist. Ct. App. 1980)). A breach of contract "by anticipatory repudiation

allows the nonbreaching party to terminate his own performance and bring litigation for damages." *Aberdeen Golf & Country Club v. Bliss Constr., Inc.*, 932 So.2d 235, 240 (Fla. Dist. Ct. App. 2005); *see also Hosp. Mortg. Group v. First Prudential Dev. Corp.*, 411 So.2d 181, 182 (Fla.1982) (where an anticipatory repudiation occurs, the nonbreaching party has an immediate cause of action).

Plaintiffs allege that BGT evinced its intent to refuse performance under the Agreement by unilaterally re-interpreting one of the Agreement's terms. FAC ¶ 64. Plaintiffs allege that BGT unilaterally re-interpreted "Attributed Revenue," one of the revenue components of the Earn-Out calculation.[4] *Id.*; Earn-Out Agreement § 1(a), (d). Plaintiffs allege that BGT reinterpreted the term in a way that undercounts the Total Revenue that would accrue to Plaintiffs from the Evos assets during the Earn-Out Period. *Id.*

The Earn-Out Agreement provides:

> "Attributed Revenue" shall mean three percent (3%) of Gross Profit derived from any transportation related services provided by a BG Entity *to any . . . customer account of the Business existing on the date herein*.

Earn-Out Agreement § 1(d) (emphasis added). Plaintiffs allege that both parties had understood the term "*any . . . customer account of the Business existing on the date*

[4] The Agreement provides that "[t]he Earn-Out shall be based on the Total Net Revenue of the [Evos] Business[.]" And "'Total Net Revenue' shall mean the sum total of . . . Continuing Net Revenue, Additional Generated Revenue and Attributed Revenue." Earn-Out Agreement § 1(a). "'Attributed Revenue' shall mean three percent (3%) of Gross Profit derived from any transportation related services provided by a BG Entity *to any . . . customer account of the Business existing on the date herein*." *Id.* § 1(d) (emphasis added).

*herein*" to mean Evos' customer accounts *and* BG's customer accounts. FAC ¶ 63. Plaintiffs allege that BGT later re-interpreted the term to mean only Evos' customer accounts. *Id.* Plaintiffs allege that they delivered notice of breach on January 24, 2025, "regarding BGT's failure to account for Attributed Revenue," and that BGT responded that it "refused to apply" Plaintiffs' interpretation of the term. *Id.* ¶ 64.

Defendants contend that a dispute over the interpretation of contract terms "fall[s] short of showing a 'distinct, unequivocal, and absolute' refusal to perform under the Earn-Out Agreement." Def. Mot. at 13.

Plaintiffs have not stated a claim for anticipatory repudiation. Accepting Plaintiffs' facts as true, the Court concludes that BGT has not repudiated the Earn-Out Agreement because, by BGT's interpretation of the term at issue, BGT has not refused to perform under the Agreement. For a contracting party to evince a "distinct, unequivocal, and absolute" refusal to perform, the parties must agree about what is required. Otherwise, the action or omission is equivocal. Without more, a dispute over a contract term may lead to a breach of contract claim, but it does not constitute an anticipatory repudiation claim. Defendants' Motion is granted as to the anticipatory repudiation claim.

5. *The Second Claim does not duplicate the First Claim.*

Defendants also contend that the Second Claim duplicates the First Claim. Def. Mot. at 9. The First Claim alleges that, by demoting Livernash, BGT breached the Livernash Employment Agreement. The Second Claim alleges that, by demoting Livernash, BGT breached the Earn-Out Agreement's implied duty of good faith and

fair dealing. Defendants contend that the claims are duplicative because they rely on the same allegations—that BGT improperly demoted Livernash. *Id.* at 9–10.

To determine whether claims are duplicative, the Ninth Circuit borrows from the test for claim preclusion. *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007). The court "examine[s] whether the causes of action and relief sought, as well as the parties . . . are the same." *Id.*; *see also Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) ("District courts are accorded a great deal of latitude and discretion in determining whether one action is duplicative of another, but generally, a suit is duplicative if the claims, parties, and available relief do not significantly differ between the two actions." (internal citation and quotation marks omitted)).

Under the Livernash Employment Agreement, BGT hired Livernash on March 1, 2024, for an Employment Term of two years. Livernash Employment Agreement § 1. Livernash was to serve in the Technology Department, report to the Chief Technology Officer, *id.* § 2.1, and "serve as a salesperson, account manager, and/or consultant" as to Evos software assets including specific subscription products, *id.*, Schedule 2.1. His duties included "the supervision and responsibility for the newly acquired business . . . purchased from Evos Logistics, Inc., . . . as well as other operational responsibilities as assigned by the Reporting Manager." *Id.* § 2.2.

Plaintiffs allege that, on April 30, 2024, BGT transferred the supervision and management of the Evos Software assets from Livernash to personnel in a different

department. FAC ¶¶ 27–30. Plaintiffs allege that BGT thus demoted Livernash. *Id.* ¶¶ 47, 58.

Plaintiffs' First Claim alleges that "BGT materially breached the Livernash Employment Agreement by demoting Livernash" and depriving him "of his contractual right to supervise and exercise responsibility" of the Evos assets. *Id.* ¶ 47. The First Claims seeks compensatory damages in the amount of $50,000 (remaining salary) and $100,000 (other amount allegedly due to him under the Employment Agreement). *Id.* ¶ 48.

Plaintiffs' Second Claim alleges that Livernash's demotion and loss of management of the Evos software assets breached the implied duty of good faith and fair dealing as to the Earn-Out Agreement. *Id.* ¶¶ 57–59. This is so, Plaintiffs allege, because they "were materially induced to enter into the Earnout Agreement" by BGT's offer to employ Livernash to supervise and manage the Evos software assets. *Id.* ¶ 57; *see also* Pl. Resp. at 14–15 (explaining same). Plaintiffs expected that Livernash, who was Evos President, would "help maximize the value of the Evos Software as a SaaS product" and thus increase the Earn-Out amount due to them at the end of the Earn-Out Period. *Id.* ¶¶ 17, 57. Plaintiffs allege that the Livernash Employment Agreement was "critical to Plaintiffs' reasonable expectations of the bargain relating to the Earnout Agreement." *Id.* ¶ 57. The Second Claim seeks damages for breach of the Earn-Out Agreement "including expectancy, reliance, and consequential damages, in an amount to be determined at trial, but not less than $1,500,000[.]" *Id.* at (page) 30.

The Ninth Circuit's test shows that the First and Second Claims are not duplicative. As to the First Claim, Livernash is the injured party; the cause of action is breach of his employment agreement; and Livernash seeks damages of $150,000, intended to place him in the position he would have been in but for the alleged breach of the Employment Agreement. As to the Second Claim, all Plaintiffs are the injured parties; the cause of action is breach of the Earn-Out Agreement's implied duty of good faith and fair dealing; and Plaintiffs seek damages of not less than $1,500,000—the maximum amount Plaintiffs could have earned under the Earn-Out Agreement but for the breach of that Agreement. Under the Ninth Circuit test, the parties, causes of action, and relief sought in each claim are different. Therefore, the First and Second Claims are not duplicative.

In sum, the Court denies Defendants' Motion as to the Second Claim. Plaintiffs sufficiently allege a breach of the Earn-Out Agreement. Plaintiffs provide several grounds for the alleged breach. The Court concludes that the anticipatory repudiation ground is not and cannot be sufficiently alleged but that the other alleged grounds sustain the claim.

B. *Third Claim – Breach of the Asset Purchase Agreement*

Plaintiffs' Third Claim alleges breach of the Asset Purchase Agreement. Plaintiffs allege that BGT anticipatorily repudiated APA § 1.05(iii), which provides for a potential Earn-Out of up to $1,500,000, "[b]y violating multiple provisions of the Earnout Agreement." FAC ¶¶ 72–74. Plaintiffs also allege two indemnification claims under the APA's indemnification provisions, APA §§ 7.03, 7.04. Plaintiffs

allege (1) an indemnification claim for losses suffered from BGT's breach of the APA caused by its breach of the Earn-Out Agreement, *id.* ¶ 74; and (2) an indemnification claim for losses suffered from BGT's breach of the APA warranty, *id.* ¶¶ 75–76 (citing APA § 4.01 (warranty)).

Defendants contend that Plaintiffs' claim of an APA breach fails because (1) it is "substantively duplicative of Plaintiffs' second claim," "because [it] stems from the same allegations as Plaintiffs' second claim" and (2) "it suffers from the same deficiencies described above and may be dismissed on those separate and independent grounds." Def. Mot. at 14. Defendants fail to provide explanation or argument to support their contentions. The Court thus declines to dismiss the Third Claim on these scant, unsupported grounds.

Defendants also contend that the indemnification claims fail because Plaintiffs failed to comply with the APA's indemnification notice requirement. *Id.* APA § 7.04(c) requires "reasonably prompt written notice [of a claim], but in any event not later than fifteen (15) calendar days after [Plaintiffs] become[] aware of such Direct Claim." APA § 7.04(c).

Plaintiffs respond that "[a]s pled in the FAC, in or around fall of 2024, Evos communicated to one or more representatives of BGT that BGT had failed to deliver to Evos any of the quarterly Earnout Statements that were required to be provided by Section [1(f)] of the Earnout Agreement." Pl. Resp. at 17. And "[a]fter not receiving any substantive response or assurance from BGT in response . . . Evos

delivered multiple formal notices of breach to BGT on or around January 24, 2025." *Id.*

Defendants reply that, based on Plaintiffs' allegation that the breaching event occurred in fall 2024, "Plaintiffs' January 24, 2025, Notices of Breach do not satisfy the 15-day notice requirement as a matter of law." Def. Reply at 8.

Plaintiffs have sufficiently pleaded an indemnification claim for three reasons. First, Plaintiffs allege that they communicated to BGT in fall 2024 concerning the failure to receive quarterly statements. Though the communication was not formal notice of breach, it may or may not have satisfied the APA's indemnification notice requirement. Second, Plaintiffs also allege that the breaching events were repeated and ongoing; Plaintiffs failed to receive quarterly statements at the close of several quarters. Each quarter, a new breach occurred. Given the alleged repeated acts of omission that Plaintiffs tried to remedy by communicating with BGT, it is unclear when Plaintiffs became aware that an indemnification claim existed. Third, the indemnification clause provides that "[t]he failure to give such prompt written notice shall not, however, relieve the Indemnifying Party of its indemnification obligations, except and only to the extent that the Indemnifying Party forfeits rights or defenses by reason of such failure." APA § 7.04(c).

In sum, accepting Plaintiffs' facts as true and viewing them in the light most favorable to Plaintiffs, Plaintiffs successfully plead indemnification claims. Whether Plaintiffs' fall 2024 communication or later Notice of Breach satisfies the notice requirement or whether Plaintiffs' indemnification claim succeeds even if notice was

deficient goes to the merits of the claim. The Court denies Defendants' Motion as to the Third Claim.

C. *Fourth Claim – Unjust Enrichment*

Plaintiffs' Fourth Claim pleads unjust enrichment "in the alternative" to their breach of contract claims "in the event any contract is determined to be unenforceable or inapplicable[.]" FAC ¶ 85. Plaintiffs allege that they conferred benefits on BGT, including "the transfer of the Evos Software, client lists, goodwill, and other aspects of the Evos Business," along with services under the Livernash and Heuer Employment Agreements. *Id.* ¶ 81. And they allege that Defendants "have failed to fully compensate Plaintiffs for the fair market value of the Conferred Benefits." *Id.* ¶ 83.

Defendants contend that "Plaintiffs' unjust-enrichment claim fails as a matter of law because the parties' rights and obligations are governed by express written agreements." Def. Mot. at 15. Defendants maintain that, in Florida, "[i]t is well settled that the law will not imply a contract where an express contract exists concerning the same subject matter." *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014).

However, in Florida, "at the pleading stage, a plaintiff may plead breach of contract and unjust enrichment in the alternative." *Aronov v. Sound Connection Distributors, Inc.*, 432 So. 3d 1057, 1063 (Fla. Dist. Ct. App. 2026), *reh'g denied* (May 7, 2026); *see also* Alhassid, 60 F. Supp. 3d at 1322 ("While Plaintiffs are entitled to

plead in the alternative, they cannot dispute the authenticity of documents they submit to the [c]ourt for consideration and which are fundamental to their claims.").

Here, Plaintiffs plead unjust enrichment in the alternative, not to dispute the authenticity of the Agreements, but "in the event any contract is determined to be unenforceable or inapplicable[.]" FAC ¶ 85. At the pleading stage, Plaintiffs are entitled to plead unjust enrichment in the alternative. Accordingly, Defendants' Motion as to the Fourth Claim is denied.

D. *Fifth Claim – Implied Duty of Good Faith & Fair Dealing*

Plaintiffs' Fifth Claim alleges breach of the implied duty of good faith and fair dealing as to the Livernash Employment Agreement, the Earn-Out Agreement, and the APA. FAC ¶¶ 87–94. Plaintiffs allege that BGT breached (1) the Livernash Employment Agreement's covenant by demoting Livernash without notice to or consent from Livernash, *id.* ¶ 90; (2) the Earn-Out Agreement's covenant by demoting Livernash and by failing to provide quarterly statements, *id.*; and (3) the APA's covenant by "failing to keep an accurate accounting of Total Net Revenue, as defined by the Earn-Out Agreement . . . thus depriving Plaintiffs of a critical part of their bargained-for exchange with respect to [the Earn-Out] portion of the Purchase Price[,]" *id.*

Defendants contend that the Fifth Claim fails because (1) the express contract governs and (2) the claim is duplicative. Def. Mot. at 16–17.

Defendants contend that the implied duty of good faith and fair dealing "is a gap-filling doctrine that . . . does not apply where the contract's express terms govern

the conduct at issue." *Id.* at 16. Defendants rely on *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318–19 (M.D. Fla. 2000) for their proposition that the implied duty of good faith and fair dealing "does not apply where the contract's express terms govern." Defendants misunderstand the doctrine. The existence of a contract does not mean that there is no implied duty of good faith and fair dealing. In *Shibata*, the court stated that "Florida courts recognize an implied covenant of good faith and fair dealing in every contract." *Shibata*, 133 F. Supp. 2d at 1318. In fact, "[t]he covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract." *Id.* "This rule . . . is aimed at protecting the reasonable or justifiable expectations of the contracting parties *in light of their express agreement*." *Id.* (emphasis added). The *Shibata* court explained that "[t]he implied covenant . . . is an interpreting, gap-filling tool of contract law[]" that "may be invoked to explain or qualify ambiguous terms[.]" *Id.* at 1318–19. Further, "where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party[.]" *Id.* at 1319.

Under Florida law, "there are two restrictions on causes of action for the breach of good faith and fair dealing." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). "First, the implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties." *Id.* "Second, a claim for breach of the implied covenant of good faith and

fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract has been breached." *Id.*

Here, for each of the three Agreements, Plaintiffs have linked an alleged implied covenant breach with the breach of an express term. And Defendants have not identified any express terms that the alleged implied covenants override. Accordingly, Plaintiffs state a claim for breach of the implied covenant as to each of the three Agreements.

The Court finds that, as to the Earn-Out Agreement, the Fifth Claim pleads the same implied covenant breach as the Second Claim. They both allege that Defendants breached the Earn-Out Agreement's implied covenant by failing to provide quarterly statements and by demoting Livernash. The Court grants Plaintiffs leave to file a conforming complaint to rectify the duplication. This is not fatal to either the Second or Fifth Claim. Defendants' Motion as to the Fifth Claim is denied.

E. *Sixth Claim – Declaratory Relief, Livernash Employment Agreement*

The Sixth Claim seeks declaratory relief for alleged breach of the Livernash Employment Agreement. FAC ¶¶ 95–99. Plaintiffs seek relief declaring that Livernash is not bound by (1) "any obligations of the Livernash Employment Agreement" or (2) "the restrictive covenants." *Id.* ¶ 98.

Defendants contend that the claim "is entirely redundant of their first claim for breach of contract under the same agreement." Def. Mot. at 17. Defendants rely on *Southshore Hosp. Mgmt., LLC v. Indep. Specialty Ins. Co.*, 582 F. Supp. 3d 1222,

1229 (M.D. Fla. 2022), for the proposition that a declaratory judgment claim is entirely duplicative of a breach of contract claim where both seek relief for the same alleged breach. *Id.* However, unlike the case here, the plaintiff in *Southshore Hosp. Mgmt.* "offer[ed] no reason to think its request for declaratory judgment [wa]s distinct from its breach of contract claim." Here, Plaintiffs seek declaratory relief that they are not bound by the Agreement's restrictive covenants. That relief differs from the relief obtained from a successful breach of contract claim. This is so because even where an employer is found to have breached an employment agreement and the employee's contractual obligations are discharged, that employer may still enforce or try to enforce a restrictive covenant.

The APA contains several restrictive covenants, including a noncompete clause, APA § 8.2; non-solicitation clauses, *id.* §§ 8.3, 8.4; and non-disparagement clause, *id.* § 9. Under Florida law, an employer's breach of an employment agreement does not automatically bar the employer from asserting the enforcement of a restrictive covenant such as a noncompete clause. "[A]n employer's breach of an employment agreement *may be considered* in determining whether to grant a temporary injunction to enforce a covenant not to compete." *Colucci v. Kar Kare Auto. Grp., Inc.*, 918 So. 2d 431, 437 (Fla. Dist. Ct. App. 2006) (emphasis added). "[H]aving committed the first breach, the general rule is that a material breach of the Agreement allows the non-breaching party to treat the breach as a discharge of his contract liability." *Id.*

Even where an employer has breached an employment contract, an employee may have to defend against the enforcement of a restrictive covenant. The employee may assert the prior breach as a defense, but the employee must show that the prior breach was material and that the covenant was dependent on the employers' contractual obligations. Where a restrictive covenant is determined to be independent of the parties' contractual obligations, it is still enforceable. *See, e.g.*, *Richland Towers, Inc. v. Denton*, 139 So. 3d 318, 321 (Fla. Dist. Ct. App. 2014) (to determine whether to enforce a restrictive covenant, a court first must determine whether the covenant is dependent or independent of the parties' contractual obligations); *see also Cordis Corp. v. Prooslin*, 482 So.2d 486, 490 (Fla. Dist. Ct. App. 1986) ("In the non-competition and trade-secret context, an employer's breach of the employment contract is a relevant factor in determining whether the employer is entitled to a temporary injunction, *at least where the breach involves a dependent covenant*." (emphasis added)); *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 565 (Fla. Dist. Ct. App. 2010) (explaining that "an employer's prior breach of the employment contract is relevant when deciding whether to grant the employer a temporary injunction where the breach involves a *dependent covenant*" but not where the breach involves an independent covenant (emphasis in original)).

Here, Plaintiffs' Sixth Claim seeks a declaration that Livernash is not bound by the Employment Agreement's contractual obligations or by its restrictive covenants. The First Claim alleges a breach of the Employment Agreement, which would discharge Livernash's contractual obligations but not protect him from

Defendants' attempt to enforce the Agreement's restrictive covenants. The claims thus do not provide the same relief and are not duplicative. Accordingly, Defendants' Motion as to the Sixth Claim is denied.

F. *Eighth Claim – Declaratory Relief, APA*

Plaintiffs' Eighth Claim seeks a declaration that "[b]ecause of BGT's material breach, Defendants are barred from enforcing any APA provisions against Plaintiffs, including but not limited to restrictive covenants, noncompetition provisions, and other post-closing obligations." FAC ¶ 120.

Defendants contend that Plaintiffs' Eighth Claim is "duplicative of their third claim for breach of the APA[,]" because "both arise from the same alleged conduct and seek the same relief." The claims are not duplicative. Plaintiffs' Third Claim alleges that Plaintiffs breached the APA. But their Eighth Claims seeks a declaration that they are not bound by the APA's restrictive covenants. As explained above, declaratory relief as to a restrictive covenant is a distinct cause of action from a breach of contract claim. Accordingly, Defendants' Motion as to the Eighth Claim is denied.

G. *Tenth Claim – Tortious Interference with Contract*

Plaintiffs' Tenth Claim alleges that BG knowingly and intentionally interfered with Plaintiffs' contractual relationship with BGT. FAC ¶¶ 130–133.

In Florida, "[f]our elements are required to establish tortious interference with a contractual or business relationship: (1) the existence of a business relationship or contract; (2) knowledge of the business relationship or contract on the part of the

defendant; (3) an intentional and unjustified interference with the business relationship or procurement of the contract's breach; and (4) damage to the plaintiff as a result of the interference." *Howard v. Murray*, 184 So. 3d 1155, 1166 (Fla. Dist. Ct. App. 2015).

Defendants contend that Plaintiffs fail to "demonstrate any intentional interference with the relevant agreements" and that the allegation that BG "employed improper means" to interfere in the relationship is "conclusory." Def. Mot. at 19.

Plaintiffs allege that BG interfered with Plaintiffs' contractual relationship with BGT by transferring the supervision and management of the Evos software assets from Livernash to a BG employee. Plaintiffs allege that the Asset Management Transfer violated the Employment Agreement that Livernash had made with BGT's former Chief Technology Officer, Azad Ratski. *Id.* ¶¶ 23, 25. Plaintiffs allege that an April 30, 2024, email from BG Senior Vice President of Managed Logistics to a BG employee stated: "Per our conversation I would like to have you own the creation of the [Evos PlanTools] SAAS sales strategy for BG." *Id.* ¶ 28. Plaintiffs allege that Livernash understood that the transfer was "contrary to Ratzki's preference and recommendations," and that "some representative of BG with higher authority than Ratzki" decided to transfer the Evos asset management from Livernash to the BG employee and that "Ratzki lacked the power to prevent this from happening." *Id.* These facts, accepted as true, sufficiently allege a tortious interference claim.

Defendants also contend that the claim fails because "[a]ny interference by [BG] was privileged." Def. Mot. at 19. Whether the alleged interference was privileged goes to the merits of the claim.

Finally, Defendants contend that "to the extent that Plaintiffs' claim alleges tortious interference with the Earn-Out Agreement and APA, it should be dismissed because there is no underlying breach of these agreements." *Id.* at 20. Whether Defendants breached the Earn-Out Agreement or the APA goes to the merits of the breach claims.

In sum, accepting Plaintiffs' facts as true and viewing them in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have sufficiently pleaded the tortious interference claim. Accordingly, Defendants' Motion as to the Tenth Claim is denied.

H. *Eleventh Claim – Equitable Accounting*

Plaintiffs' Eleventh Claim seeks an equitable accounting for "the amounts owed to Plaintiffs" that are required to be reported in the quarterly statements. FAC ¶¶ 135–139.

Plaintiffs allege that the Earn-Out Agreement and APA require BGT to provide quarterly statements that "calculate and report revenues" derived from sales of the Evos software products and purchased assets using "detailed contractual standards," including certain accounting principles, but that BGT failed to do so. *Id.* ¶¶ 136, 137. Plaintiffs allege that the quarterly statements lack "underlying transactional detail" that prevent them from verifying compliance with the

Agreements. *Id.* ¶ 138. Plaintiffs allege that BGT and BG exclusively control the books, records, and internal financial systems, have not been transparent about how revenue is accounted and reported, and have failed to respond to Plaintiffs' repeated inquiries. *Id.* ¶¶ 135, 137, 138, 139. Plaintiffs allege that "Defendants' pattern of conduct reflects . . . a systematic withholding of material financial information" that prevents Plaintiffs from ensuring that Defendants are complying with contractual obligations. *Id.* ¶ 140. Plaintiffs seek an equitable accounting "as an evidentiary aid" and "as an equitable remedy[.]" *Id.* ¶ 145.

Defendants contend that Plaintiffs' equitable-accounting claim fails because (1) "it is precluded by the Earn-Out Agreement's mandatory dispute-resolution procedure[,]" and (2) the calculations are not sufficiently complicated to require an equitable accounting. Def. Mot. at 21.

As explained above, the Earn-Out Agreement's dispute resolution procedure is not the exclusive remedy for disputes under the Earn-Out Agreement. It is limited to disputes over Defendants' determination of the Earn-Out calculation that occurs at the end of the Earn-Out Period—a future event when the suit was filed. Here, Plaintiffs do not dispute the Earn-Out calculation. Rather, they seek an equitable accounting to "compel full disclosure" of the calculations that were required to be reported in the quarterly statements. FAC ¶¶ 144, 135–145; Pl. Resp. at 12–13.

Under Florida law, a plaintiff may simultaneously assert both a breach of contract and an equitable accounting claim as to the same underlying facts. *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 694 F. Supp. 2d 1275, 1279 (S.D. Fla. 2010).

However, to state such an equitable accounting claim, a plaintiff must allege, first, "that a fiduciary relationship or a complex transaction existed, and second, that a remedy at law would be inadequate." *Bedoyan v. Samra*, 352 So. 3d 361, 365 (Fla. Dist. Ct. App. 2022); *see also Chiron v. Isram Wholesale Tours & Travel Ltd.*, 519 So. 2d 1102, 1103 (Fla. Dist. Ct. App. 1988) ("[T]here can be grounds for an equitable accounting where the contract demands between litigants involve extensive or complicated accounts and it is not clear that the remedy at law is as full, adequate and expeditious as it is in equity." (internal citation and quotation marks omitted)). But "[w]here a party has the opportunity to establish their damage claim through discovery, a request for accounting is not appropriate." *Managed Care Sols.*, 694 F. Supp. 2d at 1281 (cleaned up).

Plaintiffs contend that an equitable accounting "is proper because the accounts are complex and information is uniquely in Defendants' control." Pl. Resp. at 12. Plaintiffs maintain that the accounts are complex because they involve (1) "multiple revenue categories [and] rules by which certain revenues must be constructively imputed even if not actually received from customers[;]" (2) "adjustments based on discretionary business decisions of Defendants[;]" (3) "breaches such as the demotion of Tom Livernash that are not easily susceptible to calculation of a legal damages remedy because of an inability to rewind the clock and re-run the factual events at play[;]" and (4) "information uniquely within Defendants' control." *Id.* at 13.

Accepting Plaintiffs' facts as true and viewing them in the light most favorable to Plaintiffs, the Court is not persuaded that the accounts are so complex as to

warrant an equitable accounting or that a remedy at law is inadequate to provide relief. There are basically only two parties, the timeframe as to each quarterly statement is short, and the terms and accounting principles are defined in the Agreements. Plaintiffs allege that Defendants have "exclusive control over critical financial information." Pl. Resp at 14. But Plaintiffs may seek and obtain access to that information in discovery. "An equitable accounting is not a substitute for a motion to compel under Fed. R. Civ. P. 37." *Managed Care Sols.*, 694 F. Supp. 2d at 1281; Fed. R. Civ. P. 37. Further, Plaintiffs allege that "legal remedies are very likely to prove inadequate." Pl. Resp at 14. But Plaintiffs fail to explain why money damages would not be able to be determined or would otherwise be inadequate. For these reasons, the Court grants Defendants' Motion as to the Eleventh Claim.

In sum, the Court grants Defendants' Motion as to (1) the anticipatory repudiation claim that is part of Plaintiffs' Second Claim, and (2) the Eleventh Claim. The Court grants Plaintiffs leave to file a conforming complaint without the Second Claim's anticipatory repudiation allegations—amendment of which would be futile; without the Eleventh Claim; and resolving the duplicative Earn-Out Agreement implied covenant allegations that appear in both the Second and Fifth Claims.

**CONCLUSION**

For the reasons explained above, Defendants' Motion, ECF No. 8, is GRANTED in part and DENIED in part. Plaintiffs have 30 days from the date of this Opinion to file a conforming complaint in accord with this Opinion.

It is so ORDERED and DATED this 29th day of September 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge