Michael Litvin, OSB No. 111211
Email: ml@motivatelaw.com
MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Phone: 503-446-2667

*Attorney for Plaintiffs*
*Smartypants Industries, Inc.,*
*Thomas Livernash, Leslie*
*Livernash, and James S. Heuer*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

SMARTYPANTS INDUSTRIES, INC., formerly known as EVOS LOGISTICS, INC., THOMAS LIVERNASH, LESLIE LIVERNASH, and JAMES S. HEUER

Plaintiffs,

v.

BLUE-GRACE TECHNOLOGIES LLC, and BLUE-GRACE GROUP LLC

Defendants.

Case No. 6:25-cv-02232-AA

SECOND AMENDED AND SUPPLEMENTAL COMPLAINT



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

COME NOW Plaintiffs Smartypants Industries, Inc., Thomas Livernash, Leslie Livernash, and James S. Heuer, by counsel, and, pursuant to the Court's Opinion and Order of September 29, 2026 (ECF No. 16) and Fed. R. Civ. P. 15(d), allege as follows:

## PARTIES

1. Plaintiff Smartypants Industries, Inc. ("Evos") is an Oregon corporation formerly known as Evos Logistics, Inc. At all times relevant to this action, Plaintiff is and has been an Oregon corporation with its principal place of business in Deschutes County, Oregon.

2. Plaintiff Thomas Livernash ("Livernash") is an individual who, at all times relevant to this action, is and has been a resident of Deschutes County, Oregon.

3. Plaintiff Leslie Livernash is an individual who, at all times relevant to this action, is and has been a resident of Deschutes County, Oregon.

4. Plaintiff James S. Heuer ("Heuer") is an individual who, at all times relevant to this action, is and has been a resident of Multnomah County, Oregon.

5. On information and belief, Defendant Blue-Grace Technologies LLC ("BGT") is a limited liability company formed under the laws of the State of Florida and, at all times relevant to this action, is and has been operating in Hillsborough County, Florida.

6. On information and belief, Defendant Blue-Grace Group LLC ("BG") is a limited liability company formed under the laws of the State of Delaware and, at all times relevant to this action, is and has been operating in Hillsborough County, Florida.

7. BGT and BG, collectively, may be referred to as the "Defendants" herein.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the action is between citizens of different States and the amount in



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

controversy exceeds $75,000, exclusive of interest and costs. This action was removed to this Court under 28 U.S.C. §§ 1332, 1441, and 1446. The Court has supplemental jurisdiction over Plaintiffs' related state and common law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district under 28 U.S.C. § 1441(a) because this action was removed from the Circuit Court of the State of Oregon for Deschutes County.

## STATEMENT OF FACTS

10. At all material times leading to the execution and closing of that certain Asset Purchase Agreement (the "APA") dated as of February 29, 2024, by and among Evos, as 'Seller'; Livernash, Leslie Livernash, and Heuer, as shareholders of Evos; and BGT, as 'Buyer' and related transaction documents, Livernash served as President of Evos with responsibility for business strategy and sales; Heuer served as Chief Technology officer of Evos with all technical responsibility for the development and maintenance of the transportation software tools created and offered by Evos to third parties (collectively, the "Evos Software"); and Leslie Livernash served as Secretary of Evos, and managed customer service and administrative matters. Together, Livernash, Heuer, and Leslie Livernash may be referred to as the "Evos Officers".

11. Over the course of approximately 20 years, including work performed by one or more predecessor companies of Evos as pertains to the Evos Software, the Evos Officers developed the Evos Software into a valuable intellectual property asset. Throughout essentially all of its existence as a commercialized product, the Evos Software was sold pursuant to a software as a service ("SaaS") subscription model.

12. The Evos Business was a SaaS software business focused on providing the Evos Software to shippers, transportation service providers, consulting firms and other software firms that provide or utilize the services of the industrial transportation industry, including but not



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

limited to load planning and optimization. The Evos Software included a product named Evos PlanTools, which is a web-based load optimization software ("PlanTools"), and also included Evos BidTools, which is a web-based transportation sourcing system ("BidTools").

13. In or around 2022, an entity affiliated with Defendants, BG became a customer of Evos, as memorialized and evidenced by that certain Services Analysis Agreement with an effective date of December 1, 2022 (collectively, the Defendants, BG, and/or one or more other entities affiliated with the foregoing may be referred to as the "BlueGrace Group"). Over time, Evos and entered into discussions with the BlueGrace Group regarding the potential sale of the Evos Software and related assets of Evos to one or more of the Defendants.

14. On or around February 29, 2024, Evos sold all or substantially all of the assets used in its business operations to BGT (collectively, the "Evos Business"), pursuant to the terms of the APA, which incorporated various other transaction documents. As evidenced in part by the sale of such assets to BGT, which is understood to own and manage technology assets for the Defendants and their affiliated entities (rather than some other entity affiliated with the Defendants), the sale of the Evos Software and related software was intended as a sale of the Evos Software as a SaaS product.

15. The APA included multiple ancillary agreements and other documents, including without limitation: (a) That certain Employment Agreement (the "Livernash Employment Agreement"), dated February 29, 2024, by and between Livernash, as 'Employee' thereunder, and BGT as the 'Company' thereunder; (b) that certain Employment Agreement (the "Heuer Employment Agreement"), dated February 29, 2024, by and between Heuer, as 'Employee' thereunder, and BGT as the 'Company' thereunder; (c) that certain Earn-Out Agreement dated February 29, 2024, by and among Evos, as 'Seller', Livernash, Leslie Livernash, and Heuer, as



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

shareholders of Evos, and BGT, as 'Buyer'; and (d) that certain Guarantee (the "Guarantee") dated February 29, 2024 made by BG in favor of Evos, Livernash, and Heuer, which expressly provides that BG, as 'Guarantor' thereunder, shall be directly and primarily liable to Plaintiffs for any amount due from BGT under the various transaction documents.

16. Section 8.05 of the APA incorporated the Livernash Employment Agreement, the Earn-Out Agreement, and other Transaction Documents into the APA, stating as follows: "This Agreement and the ancillary agreements and other documents to be delivered hereunder . . . constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter."

17. Under Section 1.05 of the APA, a material portion of the total purchase price payable by BGT for the Evos Business, totaling up to One Million Five Hundred Thousand Dollars and 00/100 ($1,500,000.00), was made subject to the terms of the Earnout Agreement. As material inducement for Plaintiffs to enter into the Earnout Agreement, and to help maximize the value of the Evos Software as a SaaS product to the financial benefit of both Plaintiffs and Defendants, BGT extended the Livernash Employment Agreement to Livernash, and the Heuer Employment Agreement to Heuer.

18. Under Sections 2.1 and 2.2 of the Livernash Employment Agreement, Livernash was to serve in the Technology Department of BGT, and was to be responsible for the "supervision and responsibility" for the newly acquired Evos Business that BGT purchased from Evos.

19. In addition to the above, Schedule 2.1 of the Livernash Employment Agreement further specified that Livernash was to serve as a "salesperson, account manager, and/or



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

consultant" with respect to PlanTools.

20. Under Section 3 of the Livernash Employment Agreement, the Bend, Oregon metropolitan area was to be the principal place of Livernash's employment services to be provided under the Livernash Employment Agreement.

21. Section 17 of the Livernash Employment Agreement stated, in relevant part, as follows: "No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the CEO & President of the Company [i.e., BGT]."

22. Under Section 5.06 of the APA, BGT memorialized its intent and desire to complete a conversion process (the "Conversion Process") of PlanTools from one programming language (Visual Fox Pro) to another programming language (Python).

23. Under Section 4.5 of the Heuer Employment Agreement, BGT was required to make $100,000.00 available to Heuer, which in the first instance, was to be applied to costs attributable to any third-party vendors of Heuer's selection, subject to BGT's approval for such selection (the "Third-Party Conversion Vendors") for purposes of completing the Conversion Process. To the extent that any part of such $100,000.00 sum would not be spent on Third-Party Conversion Vendors, it was defined by Section 4.5 to constitute a surplus (the "Conversion Surplus").

24. After consultation between Heuer and BGT's then-serving Chief Technology Officer, Azad Ratzki ("Ratzki"), no Third-Party Conversion Vendors were selected to work on any part of the Conversion Process. As a result, as of the expiration of the Heuer Employment Agreement on or around February 28, 2025, the Conversion Surplus equaled an amount of $100,000.



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

25. Shortly after the closing of the APA, consistent with Section 2.1 and 2.2 of the Livernash Employment Agreement, BGT began to incorporate and operate the Evos Business as a division within its Technology Department, headed by Ratzki, which included development of a new website for the Evos Business in consultation with Livernash (the "Initial BG Evos Website"), preparation of one or more template demonstrations for Evos Software, and launch of a pay-per-click digital marketing program.

26. However, shortly after the Initial New Evos Website was completed and became publicly accessible via the Internet, it was removed and replaced with a different website (the "New BG Evos Website"), without any prior notice or opportunity to approve or withhold consent for the same afforded to Livernash. The New BG Evos Website did not include direct contact information for Livernash, and Livernash was also deprived of having any supervision with respect to the routing of leads and other information obtained from the "Contact us" page of the New BG Evos Website (https://evossmarttools.com/contact-us/).

27. Related to the above, in or around spring of 2024, Livernash learned that the Defendants together with one or more other affiliated companies, made the unilateral decision to cease operating the Evos Business as a SaaS enterprise within the Technology Department of BGT with immediate effect, and without consent of Livernash (the "Asset Management Transfer"). As part the Asset Management Transfer, the marketing and sales functions relating to the Evos Business were reassigned to personnel who were outside of the Technology Department of BGT and who were not previously familiar with the Evos Software or the maximization of profits therefrom, with the net effect of depriving Livernash of the "supervision and responsibility" with respect to the Evos Business, contrary to the express provisions of Section 2.2 of the Livernash Employment Agreement.



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

28. As an example of the Asset Management Transfer, in an email sent by Jason Lockard ("Lockard"), Senior Vice President of Managed Logistics for the BlueGrace Group, to Chris Kupillas ("Kupillas") on April 30, 2024, Lockard stated as follows: CK [referring to Kupillas], Per our conversation I would like to have you own the creation of the Plan Tools [sic] SAAS sales strategy for BG." In conjunction with the Asset Management Transfer, Livernash understood from Ratzki that contrary to Ratzki's preference and recommendations, some representative of BG with higher authority than Ratzki decided that the sales function with respect to Evos Software would be taken away from Livernash and given to Chris Kupilas, and that Ratzki lacked the power to prevent this from happening.

29. Livernash never consented to the Asset Management Transfer. Furthermore, Section 17 of the Livernash Employment Agreement states, in part, that, "[n]o provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the CEO & President of the Company. . . . [N]or shall the failure of or delay by either of the parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege."

30. The Asset Management Transfer had the net effect of putting personnel who were not previously acquainted with maximizing revenues from the Evos Software in charge of selling the Evos Software. As a result, the Evos Software was generally relegated to being used as an incremental lead source to drive sales of managed logistics for the BlueGrace Group, with a corresponding negative effect on Evos's ability to earn all of the legitimately anticipated earnout consideration under the Earnout Agreement.

31. By notice to BGT given on or around October 30, 2025, Livernash resigned his



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

position with BGT for Good Reason (as defined in the Livernash Employment Agreement), in accordance with Sections 5.1(b)(iii), 5.1(b)(v), and 5.2 of the Livernash Employment Agreement, on the basis of BGT's material breach of one or more material provisions of the Livernash Employment Agreement, and a material, adverse change in Livernash's authority, duties or responsibilities.

32. Separately and in addition to the foregoing, Section 1(f) of the Earnout Agreement states as follows: "Buyer [i.e., BGT] shall provide Seller with quarterly statements throughout the term of this Agreement calculating Total Net Revenue (collectively, the 'Earn-out Statements'). Buyer represents and warrants that each of the Earn-out Statements shall be true, accurate, complete, and fully compliant with the provisions of this Agreement." (collectively for such Earn-out Statements, the "Earnout Statements").

33. In or around fall of 2024, Evos communicated to one or more representatives of BGT that BGT had failed to deliver to Evos any of the quarterly Earnout Statements that were required to be provided by Section 1(f) of the Earnout Agreement.

34. After not receiving any substantive response or assurance from BGT in response to the above-referenced communications, Evos delivered multiple formal notices of breach to BGT on or around January 24, 2025, pertaining to the APA, Livernash Employment Agreement, and Earnout Agreement (collectively, the "Notices of Breach").

35. After receiving the Notices of Breach from Evos, BGT has delivered, through counsel, several purported quarterly Earnout Statements, but on information and belief, such Earnout Statements are inaccurate and significantly undercount earnout revenues accruing to the benefit of Evos. The purported quarterly Earnout Statements from BGT are inaccurate in part because they fail to apply all pertinent provisions of the Earnout Agreement with respect to the



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

ongoing calculations of sums that are expected to be owed to Evos under the Earnout Agreement. For example, without limiting the foregoing, it appears on information and belief that the purported quarterly Earnout Statements are violative of the principles of Historical Pricing Adjustment (as defined below) and the Good-Faith Revenue Maximization (as defined below) that are a part of the Earnout Agreement.

36. For example, without limiting the general allegations in paragraph 33, Section 1(h)(i) of the Earnout Agreement states in relevant part as follows (the "Historical Pricing Adjustment"):

> Regardless of any discounts or changes in pricing structure that [BGT] gives to itself or any its affiliates with respect to Evos PlanTools or any other products or services that are part of the Purchased Assets, as defined in the Purchase Agreement, the amount of gross revenues in calculating Total Net Revenue, Continuing Net Revenue and Additional Generated Revenue shall include all imputed sums as may be necessary to credit Seller with the amount of gross revenue that Seller would have collected from Buyer or any of its affiliates from the applicable volume of products or services at no less than the rates that applied to [Evos's] products and services for [BGT] and/or its affiliates just prior to the Closing of the Purchase Agreement under [the services agreement that existed between Evos and an affiliate of BGT].

37. In addition, without limiting the general allegations in paragraph 33, Section 1(h)(ii) of the Earnout Agreement states in relevant part as follows (the "Good-Faith Revenue Maximization"):

> [BGT] and its affiliates shall endeavor in good faith to sell to current or future customers of Evos PlanTools or any other products or services that are part of the Purchased Assets, as defined in the Purchase Agreement, at no less than the rates or flat fees that may be reasonably extrapolated from historical practice prior to the Closing of the Purchase Agreement, subject to then current macroeconomic conditions.

38. Section 1(d) of the Earnout Agreement defines "Attributed Revenue" as three percent (3%) of Gross Profit derived from any transportation related services provided by a BG



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Entity to any (i) customer account of the Business existing on the date herein, and (ii) New Seller-Sourced Customers who execute a Transportation Management Agreement or Shipper-Broker Agreement with any BG Entity. The identical phrase, "customer account of the Business existing on the date herein," also defines Continuing Net Revenue under Section 1(b) of the Earnout Agreement.

39. On January 24, 2025, Evos delivered written notice to BGT identifying BGT's failure to account for Attributed Revenue in accordance with Section 1(d). BGT has at all times since failed and refused to account for Attributed Revenue in accordance with Section 1(d), excluding from its Earn-out Statements and from its calculation of the Earn-Out the Gross Profit derived from transportation related services provided by BG Entities to customer accounts of the Business, while at the same time applying the identical contractual phrase to count Blue-Grace itself as the largest component of Continuing Net Revenue in those very calculations.

40. The Earnout Agreement contains a limited dispute-resolution mechanism in Section 3 addressing disputes over BGT's calculation of the Earn-Out amount, which mechanism applies after BGT delivers its calculation of the "Earn-Out" (as such term is defined by the Earnout Agreement) within sixty (60) days following the end of the Complete Earn-out Period (i.e., on or about April 29, 2026). Section 3 of the Earnout Agreement provides that, if the parties cannot amicably resolve a disagreement concerning BGT's calculation of the Earn-Out payment to Evos, the matter may be submitted to an independent accounting firm for purposes of recalculating the Earn-Out amount.

41. However, it is critical to note that Section 3 of the Earnout Agreement is not stated to be, and does not operate as, an exclusive dispute-resolution procedure for all disputes arising under the Earnout Agreement. Nothing in Section 3 purports to divest Plaintiffs of their



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

right to seek judicial relief, nor does it require that all claims relating to the Earnout Agreement be submitted to an accountant as a condition precedent to suit. To the contrary, Section 5.5 of the Earnout Agreement expressly contemplates judicial enforcement in multiple potential courts of competent jurisdiction.

42. Consistent with its plain language and structure, Section 3 of the Earnout Agreement is appropriately interpreted as pertaining to disputes concerning the arithmetical accuracy of BGT's Earn-Out calculation. It does not address, and was never intended to govern, claims for material breach, bad-faith performance, violations of express covenants, or BGT's failure to pay Earn-Out amounts when due. As this Court has held, Section 3 is an auditor provision limited in scope to disputes over Buyer's calculation of the Earn-Out, and it does not include disputes about whether the Earnout Agreement has been breached.

43. Section 3 of the Earnout Agreement likewise does not constitute a waiver, whether express or implied, of Plaintiffs' right to file a judicial action alleging material breaches and violations of the Earnout Agreement, including the failure to pay Earn-Out amounts when due, where BGT's wrongful conduct falls outside the limited accounting exercise contemplated by Section 3.

44. The Complete Earn-out Period under the Earnout Agreement ended on February 28, 2026. The sixty (60) day trailing collection period under Section 1(e) of the Earnout Agreement, and the sixty (60) day period for delivery of the written calculation of the Earn-Out by BGT's chief financial officer under Section 2 of the Earnout Agreement, each concluded on or about April 29, 2026.

45. On April 15, 2026, BGT delivered to Plaintiffs, through its litigation counsel, a written calculation of the Earn-Out prepared by or at the direction of BGT's chief financial



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

officer (the "April 15 Calculation"). The April 15 Calculation reports Total Net Revenue of $921,425 for the Complete Earn-out Period.

46. Under the milestones of Section 1(a) of the Earnout Agreement, Total Net Revenue equal to or greater than $800,000 but less than $1,000,000 yields an Earn-Out of $475,000. By BGT's own calculation, therefore, the Earn-Out is no less than $475,000. Plaintiffs dispute the April 15 Calculation's inputs, including its exclusion of Attributed Revenue, its failure to impute revenue as required by Section 1(h)(i), and its exclusion of billable transactions, and each of Plaintiffs' disputes operates only to increase Total Net Revenue above $921,425. No party has advanced any calculation or construction of the Earnout Agreement under which the Earn-Out is less than $475,000.

47. The Earnout Agreement, read as a whole and together with the APA, requires BGT to pay the Earn-Out that its chief financial officer determines within the period provided by Section 2. Recital C of the Earnout Agreement defines the "Earn-Out" as "the payment of additional Purchase Price" to the Seller Parties. Section 2 is captioned "Payment of Earn-Out" and provides a sixty (60) day period following the end of the Complete Earn-out Period, synchronized with the sixty (60) day collection period of Section 1(e). Section 3 provides that the Seller Parties may dispute BGT's calculation within fifteen (15) days "after receipt of any relevant Earn-out amount," and allocates the Auditor's fees by comparing the Auditor's calculation to "the amount determined by Buyer," thereby presupposing that BGT pays the amount it determines and that any dispute concerns only the increment above that amount. Section 1(g) provides that "[n]otwithstanding Section 2 herein," payment of specified amounts shall be made within thirty (30) days, confirming that Section 2 otherwise governs the timing of payment. Section 5.10 provides that "[t]ime is of the essence with respect to all dates and time



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

periods in this Agreement relating to the payment of any and all Earn-out amounts." Section 2.02(a)(iv) of the APA describes the Earnout Agreement as providing for additional Purchase Price "upon the attainment of certain financial metrics," and Section 1.05 of the APA makes the Earn-Out part of the Purchase Price. Under these provisions, payment of the Earn-Out determined by BGT became due no later than the close of the Section 2 period, on or about April 29, 2026.

48. In the alternative, if and to the extent the Earnout Agreement does not fix a date for payment of the Earn-Out, the law implies that payment is due within a reasonable time after the Earn-Out is determined. A reasonable time for payment of the amount that BGT itself determined expired, at the latest, within a short period after April 29, 2026, and in all events had expired long before the filing of this pleading. In the further alternative, payment of the $475,000 minimum became due upon Plaintiffs' written demand of April 29, 2026.

49. Nothing in Section 3 of the Earnout Agreement suspends, defers, or conditions BGT's obligation to pay the Earn-Out amount that BGT itself has determined. Section 3 concerns only disputes over the calculation of the Earn-Out and, at most, the disputed increment above the amount determined by BGT. The implied covenant of good faith and fair dealing precludes BGT from invoking the Section 3 dispute mechanism, or the pendency of a dispute over the increment, as a basis for withholding the amount BGT concedes to be owed.

50. On April 29, 2026, Plaintiffs, through counsel, delivered to BGT, to BG's General Counsel, and to Defendants' litigation counsel (a) a written notice pursuant to Section 3 of the Earnout Agreement disputing the April 15 Calculation and expressly reserving all issues of contract interpretation and breach for judicial resolution pursuant to Section 5.5 of the Earnout Agreement, and (b) a separate written demand for immediate payment of the undisputed



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

minimum Earn-Out of $475,000 produced by BGT's own April 15 Calculation.

51. BGT has disputed any present obligation to pay any portion of the Earn-Out. The parties did not resolve the calculation dispute within sixty (60) days of its arising, and no Auditor has been engaged under Section 3. Any Auditor process under Section 3 would concern only the disputed increment of the Earn-Out above the amount determined by BGT, and does not bear on BGT's obligation to pay the amount it has itself determined.

52. BGT has paid no portion of the Earn-Out, not the $475,000 minimum produced by its own calculation nor any other amount, and BG, as guarantor, has likewise paid nothing. Plaintiffs are entitled to prejudgment interest on the unpaid Earn-Out from the date payment became due, which was no later than April 29, 2026, or, in the alternative, from the date on which a reasonable time for payment expired.

53. Under the Guarantee executed by BG at Closing, BG "absolutely and unconditionally" guaranteed "the punctual payment and other performance of all obligations" of BGT under the Earnout Agreement, the APA, the Promissory Note, and the Livernash and Heuer Employment Agreements. BG is "directly and primarily liable" to Plaintiffs "for any amount due from Buyer under the Secured Documents, without requiring that Obligee first proceed against Buyer," and agreed "to pay unconditionally upon demand all amounts owed under the Secured Documents." BG waived "presentment, protest, notice of default, demand for payment, and all other suretyship defenses whatsoever," and further waived "any setoff, defense, or counterclaim that Buyer or Guarantor may have or claim to have against Obligee." The Guarantee provides that amounts owing under it bear interest from the date payable, and that Plaintiffs are entitled to recover their attorney fees, legal expenses, costs, and disbursements incurred to enforce it.

54. Plaintiffs made demand upon BG under the Guarantee on April 29, 2026. BG has



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

paid nothing. Any contention that payment of the Earn-Out may be withheld, reduced, or offset on account of asserted or anticipated attorney fees, counterclaims, or other claims is a setoff, defense, or counterclaim that BG has waived as against Plaintiffs under the Guarantee.

55. Plaintiffs gave written notice of the breaches and claims alleged herein on January 24, 2025, October 30, 2025, and April 29, 2026. Under Section 7.04(c) of the APA, any failure to give prompt written notice of a claim relieves BGT of its obligations "only to the extent that" BGT "forfeits rights or defenses by reason of such failure." BGT has forfeited no right or defense by reason of the timing or form of any notice.

## CAUSES OF ACTION
## FIRST CLAIM FOR RELIEF

**(Breach of Contract – Livernash Employment Agreement)**

56. Plaintiff Livernash herein incorporates the allegations of all preceding paragraphs.

57. In accordance with ORS 15.320(3), Oregon law applies with respect to the Livernash Employment Agreement because the Livernash Employment Agreement is a contract of employment for services to be rendered primarily in Oregon by a resident of Oregon.

58. BGT and Livernash executed the Livernash Employment Agreement, under which Livernash was expressly granted "supervision and responsibility" with respect to the newly acquired Evos Business, for a two-year term (the "Two-Year Term") that was to expire on or around February 28, 2026.

59. Livernash performed all of his obligations under the terms of the Livernash Employment Agreement.

60. All conditions required by the Livernash Employment Agreement for performance of BGT's obligations have occurred.

61. BGT materially breached the Livernash Employment Agreement by demoting



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Livernash, thus depriving Livernash of his contractual right to supervise and exercise responsibility with respect to the Evos Business, resulting in a material adverse change in Livernash's authority, duties, and/or responsibilities.

62. Due to BGT's breach of the Livernash Agreement, Livernash is entitled, without limitation, to his remaining salary of $50,000 owing with respect to the Two-Year Term under Section 5 of the Employment Agreement, the Conversion Surplus amount of $100,000 under Section 5 of the Employment Agreement, and the value of any other employment benefits as may be determined to be owing under Section 5 of the Employment Agreement.

63. Under the express provisions of the Guarantee, BG is directly and primarily liable, together with BGT, for all amounts that BGT owes to Livernash under the Livernash Employment Agreement.

64. As a result of the foregoing, Plaintiff Livernash has been damaged, jointly and severally by BGT and BG, in an amount to be determined at trial, but no less than a total of $150,000, plus interest of nine percent (9%) per annum legal rate pursuant to ORS 82.010(1)(a), from October 30, 2025 until paid.

65. Pursuant to Section 8.13 of the APA, Plaintiff Livernash is also entitled to his reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract – Earnout Agreement)**

66. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

67. BGT and Plaintiffs executed the Earnout Agreement, in the context of the broader business sale deal that included, without limitation the APA and the Livernash Employment



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Agreement.

68. All conditions required for performance BGT's obligations under the Earnout Agreement had occurred.

69. Plaintiffs have complied with all obligations required of them in relation to the Earnout Agreement.

70. BGT's actions and omissions make it liable for breach of multiple independent breaches of the Earnout Agreement, which are listed as sub-parts below:

**A. Breach of the implied covenant of good faith and fair dealing.**

71. Plaintiffs were materially induced to enter into the Earnout Agreement by BGT's contemporaneous entry into the Livernash Employment Agreement with Livernash, whose role as President of Evos and contractually promised "supervision and responsibility" with respect to the Evos Business after its acquisition by BGT was critical to Plaintiffs' reasonable expectations of the bargain relating to the Earnout Agreement.

72. As detailed above, BGT's materially breached the Livernash Employment Agreement by demoting Livernash and causing the unauthorized Asset Management Transfer.

73. BGT's material breach of the Livernash Employment Agreement constituted a breach of the implied covenant of good faith and fair dealing under the Earnout Agreement, with a corresponding negative effect on the amount of revenues that could be earned from sales of Evos Software products, thus harming Plaintiff's expectancy under the Earnout Agreement. BGT further breached the implied covenant of good faith and fair dealing under the Earnout Agreement by failing to provide the quarterly Earn-out Statements required by Section 1(f) for approximately the first half of the Complete Earn-out Period, depriving Plaintiffs of the bargained-for visibility into Total Net Revenue on which the Earn-Out depends.



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

**B. Breach of Warranty Pertaining to True, Accurate, Complete, and Agreement-Compliant Earn-Out Statements**

74. Beginning with its purported quarterly statement provided on December 20, 2024, BGT breached its representation and warranty to provide quarterly statements that were true, accurate, complete, and fully compliant with the provisions of the Earnout Agreement, in violation of its representation and warranty under Section 1(f) of the Earnout Agreement. The April 15 Calculation likewise is not true, accurate, complete, or compliant with the provisions of the Earnout Agreement, including because it omits Attributed Revenue required by Section 1(d), fails to impute revenue as required by Section 1(h)(i), and excludes billable transactions.

In Section 1(f) of the Earnout Agreement, BGT represented and warranted that it would provide true, accurate, and complete information in a way that is compliant, without limitation, with the following Sections of the Earnout Agreement:

- Section 1(b) of the Earnout Agreement, which requires BGT to reflect and count revenue, from existing customer accounts of the Business as of the date of the Earnout Agreement, derived from all assets that BGT purchased under the APA, including without limitation BidTools, subject to limited discounts or allowances;
- Section 1(c) of the Earnout Agreement, which requires BGT to reflect and count revenue, from new customer accounts of the Business arising after the date of the Earnout Agreement, derived from all assets that BGT purchased under the APA, including without limitation BidTools, subject to limited discounts or allowances; and
- Section 1(d) of the Earnout Agreement, which requires BGT to account for "Gross



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

Profit"[1] derived from any transportation related services provided by a "BG Entity"[2] to any customer account of the Business existing on the effective date of the Earnout Agreement, and certain other persons as may be relevant (collectively, "Attributed Revenue");

- Section 1(h) of the Earnout Agreement, which requires BGT to apply the principles of Historical Pricing Adjustment and Good-Faith Revenue Maximization, with the net effect being that: (a) BGT must add imputed additional revenue to certain actual revenues that are counted under the Earnout Agreement, based on applicable volume of products or services that flow through Evos Software, and (b) BGT must in good faith keep sale prices for relevant Evos Software services at or above a historical baseline, with limited exception.

**C. Breach of Obligation to Provide Quarterly Statements**

75. BGT completely failed to provide all quarterly statements that were due for the period between February 29, 2024 and December 20, 2024, in violation of its obligation and related representation and warranty to provide the same under Section 1(f) of the Earnout Agreement, and BGT only began formulating such quarterly statements after repeated inquiries and subsequent formal notices of breach that Evos delivered through counsel on or around January 24, 2025.

76. BGT's failure to provide quarterly statements under the Earnout Agreement for approximately one-half of the total Earnout Agreement period caused material damage to Evos and the other Plaintiffs by depriving them of their bargained-for opportunity to verify, as soon as

---

[1] As defined by the Earnout Agreement.
[2] As defined by the Earnout Agreement.



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

possible, whether BGT was abiding by the Earnout Agreement terms, and to tailor their efforts to best maximize Total Net Revenue under the Earnout Agreement.

**D. Failure to Pay the Minimum Earn-Out Established by BGT's Own Calculation**

77. As alleged above, the April 15 Calculation reports Total Net Revenue of $921,425, which under Section 1(a) of the Earnout Agreement yields an Earn-Out of no less than $475,000; payment of that amount became due no later than on or about April 29, 2026, or, in the alternative, within a reasonable time thereafter or upon Plaintiffs' demand; Plaintiffs demanded payment of the undisputed minimum; and BGT has paid nothing.

78. BGT's failure to pay the Earn-Out when due is a material breach of the Earnout Agreement, independent of the breaches alleged in sub-parts A through C above. As a direct result, Plaintiffs have been damaged in an amount to be determined at trial but no less than $475,000, together with prejudgment interest from April 29, 2026, without prejudice to Plaintiffs' claims that the correctly calculated Earn-Out is substantially greater, up to the $1,500,000 maximum provided by the Earnout Agreement.

**E. Failure to Pay the Earn-Out as Correctly Calculated**

79. Under Sections 1 and 2 of the Earnout Agreement and Section 1.05 of the APA, BGT is obligated to pay the Earn-Out determined by Total Net Revenue correctly calculated in accordance with Section 1 of the Earnout Agreement, including without limitation Continuing Net Revenue under Section 1(b), Additional Generated Revenue under Section 1(c), Attributed Revenue under Section 1(d), revenue imputed under Section 1(h)(i), and all other revenue the Earnout Agreement requires to be included, without the exclusion of billable transactions or any other amount the Earnout Agreement does not permit to be excluded.

80. BGT has failed to pay the Earn-Out as correctly calculated. Without limitation,



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

BGT has failed and refused to account for or pay any Attributed Revenue, has failed to impute revenue as Section 1(h)(i) requires, and has excluded billable transactions; Plaintiffs reserve the right to establish, upon discovery of BGT's books and records, which BGT exclusively controls, additional respects in which BGT's calculation of Total Net Revenue understates any component of it. As correctly calculated, Total Net Revenue for the Complete Earn-out Period exceeds the amount BGT has reported and entitles Plaintiffs to an Earn-Out substantially greater than $475,000, up to the $1,500,000 maximum provided by Section 1(a).

81. BGT's failure to pay the Earn-Out as correctly calculated, in each and every respect described above or hereafter established, is a material breach of the Earnout Agreement, independent of the breaches alleged in sub-parts A through D above. Plaintiffs' claim under this sub-part is a claim for breach of BGT's payment and accounting obligations and for the judicial determination of the meaning and application of the Earnout Agreement, including Section 1(d), which Section 5.5 of the Earnout Agreement reserves to this Court; no Auditor has been engaged under Section 3, and the Section 3 mechanism does not govern this claim. As a direct result, Plaintiffs have been damaged in an amount to be proven at trial of up to $1,500,000, less any amount paid, together with prejudgment interest.

**F. BG's Direct and Primary Liability under the Guarantee**

82. BG is directly and primarily liable to Plaintiffs under the Guarantee for every amount due from BGT under the Earnout Agreement, including the Earn-Out of no less than $475,000, upon demand, which Plaintiffs made on April 29, 2026. BG has waived any setoff, defense, or counterclaim that BGT or BG may have or claim to have against Plaintiffs, and has waived all suretyship defenses. BG's failure to pay upon demand is a breach of the Guarantee, for which Plaintiffs are entitled to the amounts due, interest at the rate the Guarantee provides



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

from the date payable, and their attorney fees, legal expenses, costs, and disbursements.

83. Pursuant to Section 5.9 of the Earnout Agreement, Plaintiffs are entitled to recover their reasonable attorneys' fees and other costs incurred in enforcing the Earnout Agreement and prosecuting this claim.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract – Asset Purchase Agreement)**

84. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

85. The APA contains an integration clause in Section 8.05, meaning that the parties to the APA contemplated that the APA and the ancillary agreements, including without limitation the Earnout Agreement, Livernash Employment Agreement, Promissory Note (as defined below), and Guarantee are all part of a business deal whose parts were intended to function in an interrelated way.

86. All conditions required for performance BGT's obligations under the APA have occurred.

87. Plaintiffs have complied with all obligations required of them in relation to the APA.

88. BGT's conduct makes it liable for multiple independent breaches of the APA, which are listed as sub-parts below:

**A. Breach of Section 1.05(iii).**

89. In accordance with Section 1.05(iii) of the APA, consideration under the Earnout Agreement is deemed to be part of the purchase price for the Purchased Assets under the APA.

90. By breaching the Earnout Agreement as alleged in the Second Claim for Relief, including by failing to pay the Earn-Out when due, BGT has failed to pay the Purchase Price



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

required by Section 1.05 of the APA, in breach of the APA.

91. Under 7.03(b) of the APA, BGT must indemnify each of the Plaintiffs and their affiliates and representatives from any losses based upon, arising out of, with respect to or by reason of, any breach or of any covenant to be performed by BGT under the APA.

**B. Breach of Section 4.01.**

92. Section 4.01 of the APA contains a warranty indicating that, "**Buyer has full company power and authority** to enter into this Agreement and the documents to be delivered hereunder, **to carry out its obligations hereunder and to consummate the transactions contemplated hereby**." (emphasis added).

93. Under 7.03(a) of the APA, BGT must indemnify each of the Plaintiffs and their affiliates and representatives from any losses based upon, arising out of, with respect to or by reason of, any inaccuracy in or breach of any of the representations and warranties of BGT contained in the APA.

94. As a proximate cause of BGT's breaches of the covenants and/or representations and warranties under the APA, Plaintiffs have been damaged in an amount to be determined at trial.

95. Furthermore, because the failures of BGT pertaining to the Livernash Employment Agreement and the Earnout Agreement relate to the essence of the business sale transaction under the APA, BGT is liable for material breach under the APA which excuses further performance under the APA, including but not limited under the noncompetition provisions and other restrictive covenants therein.

96. Pursuant to Section 8.13 of the Asset Purchase Agreement, Plaintiffs are entitled to recover their reasonable attorneys' fees, expert fees, and costs incurred in enforcing the APA



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

and prosecuting this claim.

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment – Sale of Purchased Assets)**

97. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

98. Plaintiffs conferred various benefits on BGT and BG (which is a parent company of BG and therefore on information and belief receives substantial benefits based on any benefits conferred upon BGT), including without limitation the transfer of the Evos Software, client lists, goodwill, and other aspects of the Evos Business, along with various services provided under employment agreements (collectively, the "Conferred Benefits"), to BGT.

99. BGT and BG knowingly received, accepted, and/or otherwise benefited from the Conferred Benefits from the Plaintiffs.

100. BGT and BG, however, have failed to fully compensate Plaintiffs for the fair market value of the Conferred Benefits.

101. It is unjust under the circumstances for BGT and BG to retain the Conferred Benefits.

102. Plaintiffs plead unjust enrichment in the alternative to their contract claims in the event any contract is determined to be unenforceable or inapplicable, and/or also because the Court may not be reliably able to determine damages through speculative reconstruction of a hypothetical performance scenario with full contractual compliance by Defendants.

103. As a direct and proximate result of the unjust enrichment of BGT and BG, Plaintiffs have been damaged in the minimum amount of $1,750,000.00 and such other amounts as may be proven at trial, plus post-judgment interest under Section 7.06 of the APA and/or applicable law.



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

**FIFTH CLAIM FOR RELIEF**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

104. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

105. Under Florida law, every contract is deemed to contain an implied covenant of good faith and fair dealing.

106. Therefore, each of the APA, the Livernash Employment Agreement, and the Earnout Agreement contained a covenant of good faith and fair dealing under which BGT was obligated to deal with each of the Plaintiffs fairly and in good faith in performing under the parties' agreements.

107. BGT breached the covenant of good faith and fair dealing inherent in the APA and the Livernash Employment Agreement through its improper actions and omissions, including without limitation, by: (a) materially breaching the Livernash Employment Agreement as described above, without so much as affording any prior notice to, or consent requested from, Livernash; and (b) failing to keep an accurate accounting of Total Net Revenue and to pay the Purchase Price payable under Section 1.05 of the APA by reference to the Earnout Agreement, thus depriving Plaintiffs of a critical part of their bargained-for exchange with respect to that portion of the Purchase Price that is subject to the provisions of the Earnout Agreement. The breach of the implied covenant of good faith and fair dealing arising under the Earnout Agreement is pleaded in the Second Claim for Relief and is not duplicated here.

108. As a direct and proximate result of BGT's breach of the implied covenant of good faith and fair dealings, Plaintiffs have been damaged in the minimum amount of $1,750,000.00 and such other amounts as may be proven at trial.

109. Under the express provisions of the Guarantee, BG is directly and primarily



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

liable, together with BGT, for all amounts that BGT owes to Plaintiffs pertaining to the APA, the Livernash Employment Agreement, and the Earnout.

110. As a result of the foregoing, Plaintiffs have been damaged, jointly and severally by BGT and BG, in the amount of $1,750,000.00 and/or such other amount as may be proven, plus post-judgment interest under Section 7.06 of the APA and/or applicable law.

111. Pursuant to Section 8.13 of the APA, Plaintiffs are also entitled to their reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SIXTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Livernash Employment Agreement, Material Breach)**

112. Plaintiff Livernash herein incorporates the allegations of all preceding paragraphs.

113. By materially breaching the Livernash Employment Agreement through its conduct, including without limitation, by depriving Livernash of the supervision and responsibility with respect to the Evos Business to which he was entitled under the Livernash Employment Agreement, BGT relieved Livernash of all of his remaining obligations under the Livernash Employment Agreement.

114. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy between the parties concerning whether or not the Livernash Employment Agreement provisions that survive termination of the termination of employment may continue to apply as against Livernash.

115. Pursuant to 28 U.S.C. §§ 2201 et seq. Livernash is entitled to a declaratory judgment declaring that Livernash is not bound by any obligations of the Livernash Employment Agreement, including, without limitation, the restrictive covenants that were otherwise



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

applicable under Section 8 thereof.

116. The Livernash Employment Agreement is integrated into the APA under Section 8.05 thereof. Pursuant to Section 8.13 of the APA, Livernash is also entitled to his reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this action.

**SEVENTH CLAIM FOR RELIEF**

Declaratory Judgment – Livernash Employment Agreement, ORS 653.295

117. Plaintiff Livernash herein incorporates the allegations of all preceding paragraphs.

118. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy between the parties concerning the enforceability of the noncompetition restrictions contained in Section 8.2 of the Employment Agreement.

119. Livernash was, at all relevant times, a resident of Oregon, performed his employment primarily in Oregon, and was employed in Oregon within the meaning of Oregon's noncompetition statutes.

120. Livernash's employment with BGT terminated by notice given to BGT on or around October 30, 2025.

121. Section 8.2 of the Livernash Employment Agreement purports to restrict Livernash from engaging in competitive activity for twelve (12) months following the termination of his employment.

122. ORS 653.295(1)(d) provides that a noncompetition agreement is void and unenforceable unless the employer provides the employee with a signed, written copy of the terms of the noncompetition agreement within thirty (30) days after the date of termination of



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

employment.

123. BGT did not provide Livernash with a signed, written copy of the noncompetition agreement for purposes of satisfying the requirement of ORS 653.295(1)(d).

124. As a result of BGT's failure to comply with ORS 653.295(1)(d), the noncompetition restrictions contained in Section 8.2 of the Livernash Employment Agreement are void and unenforceable as a matter of Oregon law.

125. Although the Employment Agreement contains a Florida choice-of-law provision, Oregon law governs the enforceability of the noncompetition provisions pursuant to ORS 15.320(3), which mandates application of Oregon law where: the employee is primarily employed in Oregon, and application of another state's law would permit enforcement of a noncompetition agreement that is void under Oregon law.

126. Application of Florida law to enforce the noncompetition provisions would contravene Oregon's fundamental public policy embodied in ORS 653.295.

127. The Livernash Employment Agreement asserts that the noncompetition restrictions continue to apply against Plaintiff at present despite applicable law indicating the contrary; this creates a concrete and immediate controversy regarding Plaintiff's right to engage in lawful employment and business activities.

128. Plaintiff seeks a judicial declaration to confirm that the noncompete provisions in the Livernash Employment Agreement are void and unenforceable, and no adequate remedy at law exists to fully and finally resolve this controversy absent declaratory relief.

//

//

//



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

**EIGHTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Material Breach of the APA Excuses Plaintiffs from Further Performance)**

129. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

130. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy concerning the parties' respective rights and obligations under the APA.

131. Plaintiffs and BGT are parties to the APA, which governs the acquisition of certain assets and includes ongoing and post-closing obligations, including restrictive covenants and other provisions Defendants contend remain enforceable against Plaintiffs.

132. As alleged above, BGT materially breached the APA, including but not limited to by failing to perform obligations that went to the essence of the parties' bargain and deprived Plaintiffs of substantial benefits reasonably expected under the APA.

133. BGT's breaches were material, were not merely technical or incidental, and defeated the essential purpose of the APA.

134. Plaintiffs were not in material breach of the APA at the time of BGT's breaches and have either substantially performed their own obligations or were excused from further performance by BGT's prior material breach.

135. Under applicable contract law, a party that commits a material breach of an agreement may not enforce remaining executory provisions of that agreement against the non-breaching party, and the non-breaching party is excused from further performance.

136. Certain provisions of the APA that are directed at Plaintiffs, including but not limited to noncompetition, non-solicitation, restrictive, and other post-closing obligations, are



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

executory, forward-looking provisions that depend on the continued enforceability of the APA.

137. Because of BGT's material breach, Defendants are barred from enforcing any APA provisions against Plaintiffs, including but not limited to restrictive covenants, noncompetition provisions, and other post-closing obligations.

138. A declaratory judgment will clarify and settle the legal relations between the parties, terminate doubt over whether or not the various restrictive covenants and other provisions directed at the Plaintiffs under the APA continue to apply, and will prevent multiplicity of actions regarding the enforceability of the APA.

139. Plaintiffs seek declaratory relief without rescinding the APA, and in a manner fully consistent with Plaintiffs' claims for damages arising from Defendants' past breaches.

140. Plaintiffs seek declaratory relief in connection with the enforcement and interpretation of the APA and related Transaction Documents, and are therefore entitled to recover their reasonable attorneys' fees and costs pursuant to Section 8.13 of the APA.

**NINTH CLAIM FOR RELIEF**

**(Declaratory Judgment – Promissory Note)**

141. Plaintiffs herein incorporate the allegations of all preceding paragraphs.

142. In accordance with Section 1.05(ii) and other provisions of the APA, the Transaction Documents also included a Promissory Note (the "Promissory Note") made by BGT in favor of Plaintiffs, dated February 29, 2024 in the original principal amount of $590,000.00 (the "Deferred Purchase Price").

143. Under Section 4.5 of the Heuer Agreement, any Conversion Surplus arising in connection with the APA and the Heuer Agreement shall automatically increase the amount of the Deferred Purchase Price owing under the APA.



**MOTIVATE LAW, LLC**
**11950 SW 2nd St, Suite 100**
**Beaverton, OR 97005**
**Telephone: (855) 479-4268**
**Facsimile: (503) 433-1914**
**Email: ML@motivatelaw.com**

144. This claim arises under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and presents an actual, present, and justiciable controversy concerning the current balance due under the Promissory Note.

145. Pursuant to 28 U.S.C. §§ 2201–2202, Plaintiffs are entitled to a declaratory judgment declaring that the amount of the Deferred Purchase Price under Section 1.05(ii) of the APA, and thus the corresponding balance of the Promissory Note automatically increased by $100,000 (based on the existence and amount of the Conversion Surplus) as of the expiration of the term of the Heuer Employment Agreement on or around February 28, 2025.

146. Pursuant to Section 8.13 of the APA, Plaintiffs are also entitled to their reasonable attorney's fees and other costs fees, costs, and expenses of every kind incurred in connection with this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

**A. Compensatory Damages**

1. For compensatory damages in favor of Plaintiff Thomas Livernash and against Defendants Blue-Grace Technologies LLC and Blue-Grace Group LLC, jointly and severally, for breach of the Livernash Employment Agreement, in an amount to be determined at trial, but not less than $150,000, together with prejudgment and post-judgment interest as allowed by law.

2. For compensatory damages in favor of Plaintiffs and against Defendants, jointly and severally, for breach of the Earnout Agreement, including expectancy, reliance, and consequential damages, in an amount to be determined at trial, but not less than $1,500,000, and in no event



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

less than the $475,000 minimum produced by Defendants' own April 15, 2026 Earn-Out calculation, together with prejudgment interest from April 29, 2026 and post-judgment interest as allowed by law, and, as against Blue-Grace Group LLC, the same amounts under the Guarantee together with interest at the rate the Guarantee provides from the date payable.

3. For compensatory damages in favor of Plaintiffs and against Defendants, jointly and severally, for breach of the Asset Purchase Agreement, including damages arising from the failure to pay the Purchase Price, in an amount to be determined at trial, together with prejudgment and post-judgment interest.

**B. Declaratory Relief**

4. For a declaration that Defendants materially breached the Livernash Employment Agreement and that, as a result, Plaintiff Thomas Livernash is excused from further performance and is not bound by any post-termination obligations, including any restrictive covenants.

5. For a declaration that the noncompetition provisions of the Livernash Employment Agreement are void and unenforceable under ORS 653.295 and ORS 15.320.

6. For a declaration that Defendants materially breached the Asset Purchase Agreement and that, as a result, Plaintiffs are excused from further performance and Defendants are barred from enforcing any executory provisions of the APA, including restrictive covenants.

7. For a declaration determining the correct balance due under the Promissory Note, including a declaration that the Deferred Purchase Price increased by $100,000 as a result of the Conversion Surplus.

**C. Attorney Fees and Costs**

8. For an award of reasonable attorneys' fees, expert fees, and costs of suit to the extent



MOTIVATE LAW, LLC
11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Telephone: (855) 479-4268
Facsimile: (503) 433-1914
Email: ML@motivatelaw.com

permitted by contract and applicable law, including but not limited to:

(a) Section 8.13 of the Asset Purchase Agreement;

(b) Section 5.9 of the Earnout Agreement;

(c) the Guarantee; and

(d) any applicable statutory or equitable basis.

**D. Other Relief**

9. For such other and further relief as the Court deems just and proper.

Dated: October 29, 2026

MOTIVATE LAW, LLC

s/ Michael Litvin

Michael Litvin, Attorney
OSB No. 111211

11950 SW 2nd St, Suite 100
Beaverton, OR 97005
Phone: 503-446-2667
Email: ml@motivatelaw.com
Attorneys for Plaintiffs